NELSON F. LIND *vs.* INTERSTATE MOTOR COACH CORP.

JUNE 17, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

STEARNS, C. J. This is an action on the case for negligence. After a jury trial and a verdict for plaintiff for $22,500, the trial justice granted defendant's motion for a new trial, unless plaintiff remitted all of the verdict in excess of $15,000. Plaintiff did not file a remittitur.

The case is in this court on two bills of exceptions, one, of the plaintiff in which the principal exception is to the action of the court in reducing the amount of the verdict, the other, of the defendant in which the principal exceptions are to the denial of defendant's motion for a new trial and to the refusal to direct a verdict for the defendant.

The amended declaration alleges that on October 31, 1926 defendant, a Rhode Island corporation, was the owner of a jitney motor bus which was being driven by its employee or driver northerly on Louisquisset Pike in North Smithfield; that plaintiff was seated in an automobile truck which had been temporarily stopped on said public highway and that defendant by its employee or driver did negligently run its motor bus into said truck thereby causing the injuries for which plaintiff sues.

The accident happened in the early evening on a straight section of a country highway. A jitney motor bus on a scheduled trip between Providence and Worcester ran into the rear of plaintiff's truck and injured him. The driver of the bus, one Arthur J. McDermott, was an employee of the Providence-Worcester Coach Line, Inc.; for several months before this time he had operated its jitney bus between Providence and Worcester, Massachusetts. On the afternoon of the day of the accident, the bus McDermott was driving was found to be out of order on its arrival in Providence; and a motor bus was then borrowed or rented from the defendant Interstate Motor Coach Corp. to avoid any delay in his return trip to Worcester.

The Providence-Worcester Coach Line, Inc. was licensed to operate jitney busses between Providence and Worcester. The defendant was licensed to operate jitney busses between Providence and Attleboro, Massachusetts. The two companies with others used a common terminal station in Providence.

At the trial the plaintiff offered in evidence a surety bond, running to the General Treasurer of the State of Rhode Island, given by the defendant as principal and the Metropolitan Casualty Co. as surety in compliance with General Laws, 1923, Chap. 254, "Of Public Service Motor Vehicles Operating over Fixed Routes." The bond recites that the Interstate Motor Coach Corp. is the owner of a certain motor vehicle and has been granted a certificate of public convenience and necessity No. 117 and a jitney registration No. 84. Jitney registration No. 84 authorized the use by defendant of the designated motor vehicle over a set route between Providence and Attleboro as a jitney for transportation of twenty-five passengers for hire..

The bond binds the principal and the surety jointly and severally to pay all final judgments obtained against the principal for any injury to persons or property resulting from, or caused by, the use or operation of the registered jitney "by said principal or his, their, or its agents, em-

ployees or drivers, or either of them during the term of such registration."

The trial justice in his charge to the jury in effect directed a verdict for the plaintiff on the issue of liability; the only substantial question really left to the jury was the amount of the damages. The trial justice based his charge on the avowed ground that public policy required that defendant should be held liable for the negligent operation of its motor bus, although not operated by its servant, as otherwise there would be no statutory bond securing to plaintiff payment for his damages.

In a suit of debt on this same bond for the benefit of this same plaintiff we recently decided that, by the terms of the bond required by Chapter 254, a person injured by the operation of a registered jitney bus could not maintain a suit for a breach of the bond before he first had obtained judgment against the principal in an action to recover for injuries resulting from the operation of the jitney bus by the principal. The demurrer to the declaration was sustained. See *Clark* v. *Metropolitan Casualty Co.*, 49 R. I. 372. Thereafter, this action against defendant was begun by plaintiff. The basis of the alleged liability is the negligent operation of defendant's jitney bus by its agent, employee or driver. The action is the usual one at common law wherein the master is sought to be held liable for the negligence of his servant while acting within the scope of his employment.

The evidence is undisputed that McDermott was not the agent, servant or employee of defendant; he was not engaged on defendant's business nor was he employed by, or in any way under the control of, defendant. Unless the common law has been changed by statute, the defendant is not liable. *Colwell* v. *Ætna Bottle & Stopper Co.*, 33 R. I. 531. Plaintiff's contention is that, as the owner consented to the use of its bus, the operator, though not an agent or an employee of the owner, should, nevertheless, on the ground of public policy be held to be the driver of the owner for the

purpose of fixing the owner's liability for any negligent operation; that, as the use of the bus on this route was unauthorized and illegal, the consent to such use estopped defendant in this action from the defense that the operator was not its servant. Liability is sought to be established, not by the provisions of any statute but by implication from the obligation of the bond.

In support of his contention, plaintiff relies on the case of *McDonald* v. *Lawrence et al.*, 100 Wash. 215. This was an action against the principal and the surety on a jitney bond for personal injuries sustained by a pedestrian who was struck by a registered jitney bus. Krueger, the driver of the jitney, testified that he was driving for the defendant Lawrence, the owner of the jitney; that he hired the car from Lawrence at the rate of $3 per day, ran it as he pleased and bought his own gasoline and oil; Lawrence furnished everything else and kept the car in good running order. Lawrence had a general jitney license and had filed a bond.

Upon the appeal of the defendants from a judgment rendered upon a verdict for the plaintiff, it was decided that the question whether the driver was merely a lessee or an employee, for whose negligence the owner was liable, was a question for the jury and that their finding of fact that he was an employee was controlling. In its opinion the court further says: "But should we agree with appellants that the evidence under discussion presented a question of law for the court, in that it clearly showed a letting rather than an employment, we would be compelled to hold against appellants on the ground that the contract was in violation of public policy."

"The object of the law is clearly to deny the right to operate automobiles as passenger carriers . . . without the obtaining of a permit from the city authorities and the giving of a bond for the protection of the public against any personal injuries resulting from such operation. . . . Any contract of the licensee tending to shift liability from himself and his bondsman . . . must necessarily be construed

as a device for evading the effect of the law. . . . The permit and bond cover a specific machine, and any contract which would defeat the statute would necessarily be void as against public policy." Judgment was affirmed.

It is to be noted in the *McDonald* case that the defendant was licensed and authorized to operate this jitney in the place where the accident happened; the operator was not thus authorized and presumably was driving the jitney under the authority of defendant's jitney license. In so far as this decision may be considered to be based on public policy, we must respectfully disagree both with the reasoning of the court and the decision. The creation of any such new liability on the ground of public policy, we think, must be by act of the legislature, not by judicial decision. Public policy is a variable and often a vague quantity. An important factor in its determination is the consideration of all the legislation with respect to the matter in issue.

In this State the nature and extent of the legal protection of the public from the improper use of motor vehicles varies with the kind and the use of such vehicles. See *Kernan* v. *Webb*, 50 R. I. 394. Compulsory insurance by owners and operators of motor vehicles is not generally required. Only after a motor vehicle has become involved in an accident on a State highway and death, or damage to the amount of $100 or more has resulted therefrom, and after the State Board of Public Roads, upon investigation, has found that there has been negligence or violation of certain laws, can the State board require the carrying of insurance or the furnishing of evidence of financial responsibility to meet claims for damages by the owner and operator.

In 1927, the year after this accident, a limited enlargement of the common law liability was made by Chapter 1040, Public Laws, 1927. This act provides that any person operating any motor vehicle upon any public highway of this State with the consent of the owner, lessee or bailee, shall be deemed to be the agent of such owner, lessee or bailee. The act was supplementary to Chapter 98 (of

Motor Vehicles and the Operation Thereof) and Chapter 254 of the General Laws.

Persons or corporations required to file a bond under Chapter 254 and all motor vehicles for which no registration fee is required under General Laws, 1923, Chap. 98, Sec. 8, were declared to be exempt from the provisions of the act. The exemptions thus made include jitney motor busses, fire engines and apparatus, motor vehicles owned by the State or by any town or city thereof, by the United States government or the accredited representative of a foreign government.

Chapter 1040 was repealed in 1929 by Public Laws, Chapter 1429, but the substance of Chapter 1040 as above stated is included in Chapter 1429. Jitney motor busses operating over fixed routes, as thus appears, are expressly exempted from the new liability imposed on other owners or bailees who consent to the use by others of their motor vehicles. The liability of the owners and operators of jitney busses is governed by the rules of the common law and General Laws, 1923, Chap. 254 and amendments thereof; jitneys are by this act declared to be common carriers and, as such, subject to the jurisdiction of the Public Utilities Commission. A certificate of public convenience and necessity, specifying the precise route over which a jitney bus may operate, must be obtained from said commission. Thereafter, the State Board of Public Roads is given jurisdiction over the registration of any jitney and the licensing of its operator.

Section 13 of Chapter 254 provides that every person or corporation, after filing the certificate of public necessity with the State Board of Public Roads, before operating any jitney shall deposit with the state treasurer a bond running to said treasurer in form and substance approved by the board of public roads, with such surety, *if any*, as said board may require, conditioned to pay any final judgment against the principal named in the bond for any injury to person or property caused by the operation of such jitney by

the owner thereof or his agent, employees or drivers. The requirement of a surety on the bond is apparently, from the wording of Section 13, intended to be discretionary with the board of public roads.

In Public Laws, 1928, Chap. 1141, it was provided that the provisions of Section 13, requiring the filing of a bond, should not apply to any person or corporation subject to General Laws, 1923, Chap. 254, furnishing certain evidence of financial responsibility.

In view of the different requirements of the statutes, it is evident that in some instances no additional security by statutory bond for the recovery for injury caused by jitney busses is provided. Such being the case, a general liability applicable to all operators of motor busses can not be based on a liability established only by such bonds as are required; and no general rule of liability based on public policy can be said to exist and to be applicable alike to all jitney busses.

There is no estoppel of the defendant to deny liability; plaintiff was not mislead nor deceived by defendant. The use of the bus by the bailee was illegal and the contract of bailment may be unenforcible because of defendant's knowledge of the proposed use. But the prohibition of the statute is of the unlicensed use; the statutory penalty of fine or imprisonment is imposed on the actual user of the jitney, not on the one who merely consents to or permits its use. (G. L., 1923, C. 254, Sec. 10.)

The liability of defendant is for the negligence of its own servants and drivers. The bond provides the additional liability of surety after judgment first obtained against the principal; the surety's liability is no greater than that of the principal.

For the reasons stated, the defendant is not liable in this action and a verdict should have been directed for defendant.

The plaintiff's exceptions are overruled. The defendant's exception to the refusal to direct a verdict is sustained. Any consideration of other exceptions of defendant is unnecessary.

The plaintiff may, if he shall see fit, appear before this court on June 24, 1930, at 9 o'clock, a. m., Standard time, and show cause, if any he has, why an order should not be made remitting the case to the Superior Court with direction to enter judgment for the defendant.

*Fergus J. McOsker,* for plaintiff.

*Frederick A. Jones, Fred B. Perkins,* for defendant.