## SKIRVIN, Ex'x, v. SKIRVIN et al.

No. 24491.   May 19, 1936.

Rehearing Denied Sept. 22, 1936.

J. B. Dudley, D. Hayden Linebaugh, John L. Gleason, John Barry, and J. F. McKeel, for plaintiff in error.

S. P. Freeling, Bliss Kelly, and Fred P. Branson, for defendants in error.

WELCH, J. In this action in the trial court, commenced in 1930, it was the contention of the plaintiff, Nellie K. Skirvin, executrix, that since 1916, or 1917, the defendants had held in trust for C. J. Skirvin, who died in 1928, 100,000 shares of stock in the American Oil & Refining Company, a corporation; that she was now entitled to recover such stock and to have an accounting of the earnings thereof for the approximately 13 years. No stock in the corporation had ever been issued to C. J. Skirvin, nor had any dividend or payment thereon ever been made to him during his lifetime or to plaintiff as executrix.

The defendant with some force urges a bar by the statute of limitations and by laches on account of the long delay in the asserting of any claim by or in behalf of C. J. Skirvin, but our conclusion makes it unnecessary to discuss that contention.

The trial court found, in substance, that whatever interest C. J. Skirvin held in the leases which formed the original property of the American Corporation, or whatever claim C. J. Skirvin had against the corporation or against W. B. Skirvin, was conveyed or released or relinquished to W. B. Skirvin in writing in 1918, and further evidenced in a second written contract in 1920, when the two Skirvins settled and separated their property interests, each for valuable consideration making certain relinquishments or releases to the other. The plaintiff requested a finding of fact to the effect that in 1917 W. B. Skirvin received and held in his name 100,000 shares of stock in the corporation, as trustee for the use and benefit of C. J. Skirvin, and that said trust remained and continued until the death of C. J. Skirvin in 1928. This the trial court expressly refused to find from the evidence. It is not necessary to note in detail other specific findings of fact which were requested by the plaintiff and refused. The trial court did make extended findings of fact on various disputed details, but no such finding is in conflict with the findings as to the settlement and relinquishment or release between the Skirvins some nine years approximately before C. J. Skirvin's death, nor in conflict with the general finding that plaintiff had not established any right to a recovery from either of the defendants.

On appeal the plaintiff presents many assignments of error. Several are included in the contention that the trial court erred in its findings of fact. The rule is settled, of course, that this court cannot reverse those findings of fact unless they are against the clear weight of the evidence. We deem it wholly unnecessary to cite our many former statements of that rule. The voluminous trial record is shown here in 20 volumes. We have examined it, and have been further enlightened by the briefs and oral argument. We find that every finding of fact is abundantly supported by competent evidence.

The plaintiff urges that various items of evidence supporting the defense are untrue. If we could follow those suggestions in each instance and were at liberty to discredit and disregard the material and competent evidence of the defense, we might find the trial court's conclusions unsupported, but this we cannot do.

The plaintiff sought diligently to establish her cause and to refute the defense, and to discredit defendant's evidence, in many instances offering contradictory evidence, but the credibility of witnesses was for the trial court. Stone v. Easter, 93 Okla. 68, 219 P. 653; Beams v. Step, 116 Okla. 291, 244 P. 775. And we cannot say the trial court did not correctly apply his discretion and judgment to the evidence presented.

The plaintiff urges that essential witnesses in the defense are unworthy of belief. It is shown that such witnesses made prior statements and declarations which plaintiff

construes to be so contradictory to the present position taken as to justify the conclusion of present falsification for gain. The testimony of these witnesses, if presenting any improbable facts whatever, is in no possible sense so improbable as to justify its unbelief or even to cast doubt upon its truth. Nothing whatever is shown to indicate such loss or lack of character and integrity as would necessarily accompany the falsification of the details of this defense. We cannot but notice this contention of the plaintiff, stressed as it is by brief and oral argument, but the trial court observed the witnesses and heard them testify and accorded them credibility, and we must dismiss this contention with the observation that there is nothing in the record to justify this court in doing otherwise.

The plaintiff questions the authenticity of certain documentary evidence of the defense, and particularly the signed settlement. It purported to be signed by the two Skirvins, one of whom has since died. The trial court properly permitted it to be subjected to various scientific tests. There were several expert witnesses. The questioned signature, although discredited and dishonored by some witnesses, was demonstrated to be authentic by more than one handwriting expert, was readily accepted as genuine by witnesses who knew the signature of the individual, and was supported by those who saw the document signed. There was nothing irregular in the appearance of the instrument, and when it was introduced and its execution testified to, it imported verity. If the plaintiff's attack upon it had been wholly unanswered, then doubt might have been cast upon it, but the record shows abundant evidence in answer to the attack, clearly justifying the conclusion that such evidence fairly preponderates over the adverse proof, and thus supports the conclusion of the trial court.

There was other documentary evidence, including letters, questioned sharply as to authenticity. As to those documents, similar evidence was considered, as just stated, except as to the letters, no witness saw the writing done. As to the several questioned documents, they were strongly attacked and strongly defended. In each instance the proposed showing was made as strongly as the proponent thereof could make it. As to these items of evidence, the record discloses much diligence in the trial and they are thoroughly presented here, but we find therein nothing to justify us in setting aside the conclusions of the trial court.

The record does show evidence of prior contradictory statements of some witnesses, but in most, if not all instances, there is denial of such statements. This might be said as to witnesses upon both sides of the case. There was also offered alibi evidence to show that the person involved was not present but was at another place at the time when it was asserted he was present and did or said material things. We have not overlooked plaintiff's contentions as to these matters, but find nothing therein to justify a reversal. There was testimony as to acts of C. J. Skirvin in his lifetime and positive statements made by him indicating no claim against the defendants and no claim of interest in the properties here involved. This testimony appears worthy of full belief. Of course, whether true or false, it could not be wholly disputed, because C. J. Skirvin had died. But that fact alone does not justify us in saying that we will disregard the testimony of disinterested witnesses whose credibility is not questioned. This testimony is further supported by the fact that during his lifetime C. J. Skirvin neither received nor demanded of the defendants any accounting or payment, nor anything to show he possessed any claim or demand to any of these properties, which long before his death had become quite valuable.

The plaintiff urges her right to a new trial because of asserted misconduct of defendant after the case was closed, but before judgment, in filing a motion to reopen for further evidence, with affidavits attached showing the new evidence which defendant sought permission to introduce by oral testimony of witnesses. Upon the hearing of such motion, the plaintiff's objection to reopening, based on immateriality of impeaching matter offered, was sustained and the court refused to reopen. After judgment the plaintiff assigned this as one ground of the motion for new trial. It seems to be plaintiff's theory that the trial judge was influenced by this motion to reopen with the affidavits attached, and that the presentation of this matter by defendant was such misconduct as to entitle plaintiff to a new trial. We are unable to follow that reasoning or to attach any controlling importance to this assignment. If the substance of the new evidence was of first importance to the main issue and wholly material thereto, still the ex parte affidavits would have no evidential value, and would not be permitted by the court to enter into his fact consideration. The record indicates

this rule was fully appreciated and followed by the trial court. In objecting to the reopening plaintiff considered the subject-matter of this new evidence to be immaterial as to the main issues of the case and secondary matter, and so urged upon the court. The trial court appears to have followed that contention in holding the matter to be immaterial and refusing to reopen. Then it would appear certain that these matters could not and did not influence the trial court, or enter into his fact findings. It was in effect so held by the trial court when he overruled the motion for new trial, and from the whole record we are convinced that it is so.

It is always assumed that the trial court based its findings of fact upon the competent, material evidence presented in the orderly trial, and that immaterial, incompetent, or secondary matter offered, but rejected, was not given consideration. See Barrows v. Alford, 129 Okla. 265, 264 P. 628.

Plaintiff urges that defendant W. B. Skirvin is estopped to make the claims relied upon here because of his testimony in a former proceeding. That former testimony was not introduced to support any plea of estoppel, in fact no estoppel was pleaded, but that testimony was introduced by plaintiff in her case in chief, and expressly for the purpose of showing statements against interest. It doubtless was fully considered by the trial court in determining the credibility of the witness and the weight and value to be given his testimony, and in determining all the facts in the case. We find nothing therein upon which the plaintiff may now predicate estoppel.

We are impressed with the statement in plaintiff's brief that:

"The questions of law involved upon this appeal are not difficult. It is essentially a fact case."

That statement we think is quite apt. The plaintiff, as executrix, had both the right and duty to gather up the property of the estate, and to sue where there was any possibility of discovering property of the decedent. The right to recover would, of course, depend on the showing in fact of the ownership of property. Here, if the decedent had any claim against the American Corporation or against W. B. Skirvin, he had not for a number of years before his death received anything on it or any of its earnings, nor demanded anything, nor obtained or sought to obtain any documentary evidence of his rights or claim or interest. Of course these facts and the fact that he did not seek to enforce his claims while living do not preclude the existence of any claim, but they are of some weight and do indicate plaintiff's natural handicap in seeking to establish a claim to the large amount of value here involved. With all diligence plaintiff was not able to substantiate a claim to the satisfaction of the court by a fair preponderance of the evidence. This, indeed, "is essentially a fact case." The record discloses clearly that the trial court's finding for defendant upon a fair preponderance of the evidence is justified. We deem it unnecessary to discuss the evidence in any further detail than to say there was much evidence on both sides, by oral testimony of witnesses, by documents, and by expert witnesses. The evidence was in sharp conflict upon most every question of fact. There were no errors of law in the trial, and the evidence appears to have been fairly and fully considered, and conscientiously weighed.

It is suggested in argument that in some instances the trial record shows evidence in such direct conflict as to disclose false testimony on the one side or the other, and it is urged that the findings and judgment of the trial court are based upon or follow the line of false testimony. It has been said that even in cases where there has been plain perjury on one side or the other, the appellate court must be greatly influenced by the opinion of the trial judge, who has seen and heard the witnesses. See 4 C. J. 885, note 39. Upon reflection it must be concluded that the trial judge is in a better position to determine which of the witnesses has spoken the truth. The trial judge sees the witness and observes his demeanor and manner of answering questions upon direct and cross-examination. It is difficult, approaching the impossible, to read the written report of conflicting oral testimony and say that this is false while that is true. The judge, although in the presence of the witnesses, is not omnipotent or all-wise, for he is human, and must judge the integrity of a witness by those things which the human mind may note, observe, and consider. Many circumstances, hesitations, faltering statements, evasions, or the opposite, or other actions might be observed by the trial judge and direct him to a proper and correct conclusion as to credibility and veracity, which would not at all be apparent from an examination of the record by the appel-

late court. In some cases the trial court may err and by circumstances of truth and veracity he may, in entire honesty and good faith, be led to accept that which is false contrary to that which is true, but that does not often occur, and is much less likely to occur in a case such as this one, exhibiting as it does the highest degree of diligence by parties and attorneys in presenting evidence upon both sides of the question. The findings of the trial court here are not conclusive and binding upon this court, for it is our duty to weigh the evidence, but after doing so we do not hesitate to give to the findings of the trial court the full force and effect to which those findings are entitled under the long-established rules of law which guide us in reviewing such judgments of trial courts. Such consideration impels our conclusion that the findings and judgment of the trial court must be affirmed, and it is so ordered.

McNEILL, C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. RILEY, J., absent. OSBORN, V. C. J., and BUSBY, J., disqualified. PUGH and CLARK, Special Justices, concur.