### BRADLEY v. CHICKASHA COTTON OIL CO.

No. 28202. Nov. 22, 1938.

William McFadyen and Clayton Carder, for plaintiff in error.

Butler, Brown & Rinehart and Sam L. Wilhite, for named defendant in error.

PHELPS, J. On September 28, 1933, the plaintiff was struck by a truck being driven between Eakley and Anadarko, Okla., by the defendant Walters, who was an employee of the defendant Moore, owner of the truck. The truck was hauling cotton seed from a gin at Eakley to Anadarko, pursuant to an arrangement between Moore and the defendant Chickasha Cotton Oil Company.

The plaintiff sued the above three defendants for damages on account of personal injuries received in the accident. The trial judge sustained the defendant. Chickasha Cotton Oil Company's demurrer to plaintiff's evidence, but overruled the demurrers of the defendants Moore and Walters. Thereupon the plaintiff dismissed his cause of action without prejudice as to the individual defendants, and prosecutes this appeal from the order sustaining the company's demurrer to the evidence. The demurrer was sustained on the ground that the plaintiff's evidence showed that Moore, who was the owner of the truck and employer of the driver, was an independent contractor with the Chickasha Cotton Oil Company, and not its servant.

The plaintiff urges reversal under the general proposition that the evidence was sufficient to require the court to submit the issue of agency to the jury, that is, whether Moore was the servant of the company, as distinguished from an independent contractor.

As to the facts in the case bearing on this issue, there was no conflict in the evidence. "Where evidence is undisputed, the question of whether the relation of the parties is that of contractor and contractee, or employer and employee, is one of law for determination by the court." Branham v. International Supply Company, 166 Okla. 273, 27 P.2d 354; Fairmont Creamery Co. of Lawton v. Carsten, 175 Okla. 592, 55 P.2d 757. There was therefore no error in this connection unless the trial judge erred in his application of the law to said undisputed facts.

As stated above, the defendant Moore owned the truck. He made an oral agreement with the defendant cotton oil company to transport cotton seed, from time to time, from a farmer's gin at Eakley to Anadarko, for $1.30 a ton. The company exercised no control or supervision over Mr. Moore in the hauling of the seed, in any manner. Mr. Moore lived at Eakley, and when there was seed to haul, he transported it without orders from the company. Mr. Moore exercised his own discretion in employing the truck driver, who was subject only to Moore's orders, and who was paid by Moore, at a rate agreed upon between the two of them. Moore chose his own route and his own manner of doing the work. He provided his own gasoline, oil, tires, and other accessories, and maintained the truck, at his own expense. In short, under the usual tests to determine whether the relationship is that of employee or independent contractor (see Barnsdall Refining Co. v. State Industrial Commission, 163 Okla. 154, 21 P.2d 749, and Texas Pipe Line Co. v. Willis, 172 Okla. 148, 45 P.2d 138), there was no evidence indicating Mr. Moore to be other than an independent contractor. Of course, as urged by plaintiff, the company could have terminated the contract at any time, by refusing to permit Moore to do any more hauling, but that throws no light on the relationship of the parties while the contract was in force. If the agreement and the practice under it set Moore apart as an independent contractor, then the fact that the company was not bound to continue using his services would not transform him into a servant.

The plaintiff does not strongly contend

that the foregoing constituted Moore the servant of the Chickasha Cotton Oil Company. He does urge, however, that by permitting Moore to operate under its truck permit, with the consent of the Corporation Commission, and paying the mileage tax on the cotton seed hauls, the company made Moore its servant. The evidence reveals that either at the time when the agreement between the company and Moore was made, or shortly thereafter, the company's representative who engaged Moore promised him that he would be permitted to operate under its truck permit and that the company would pay the mileage tax for the transportation of the cotton seed. The company obtained the oral consent of the proper officials of the Corporation Commission, according to the record.

Under section 3700, O. S. 1931, 47 Okla. St. Ann., sec. 161, the cotton oil company was a Class C carrier (engaged in the transportation of property in furtherance of a private commercial enterprise and not operating as a private carrier for hire or common carrier for hire); and Moore was a Class B motor carrier (not being a common carrier nor coming within the description of a Class C carrier, since he was a private carrier for hire, and thus being included within the description "all * * * motor carriers not operating as Class 'A' or 'C' motor carriers," etc.). The above section was amended by S. L. 1933, ch. 156, p. 354, and S. L. 1935, ch. 20, art. 12, p. 27, but not in a manner material to the present case, and the same is true as to the other sections mentioned herein. The Chickasha Cotton Oil Company had a Class C permit, from the Corporation Commission, to operate its trucks. The permit did not purport to cover specifically named trucks, but was of a general or 'blanket" nature, permitting the company to operate its trucks or trucks leased by it. There is no evidence indicating that the company was leasing the truck involved in the present case. It is unnecessary to decide, and we do not decide, whether the Corporation Commission had authority, orally or otherwise, to permit Moore, a Class B carrier, to operate under the cotton oil company's Class C permit. For the purpose of giving plaintiff's argument full consideration and in order that no error in that connection may occur, we assume for the purpose of reasoning that the Corporation Commission had no authority to waive that portion of section 3709, O. S. 1931, 47 Okla. St. Ann. sec. 170, which provides that permits shall be considered personal to the holders thereof, and forbidding the permitting of the exercise by another in any wise of the rights and privileges granted under such permits. We also give due consideration to the fact that but for the cotton oil company's permitting Moore to operate under its permit he would have been compelled to obtain a Class B permit and file the public liability insurance policy or bond required by section 3708, O. S. 1931, S. L. 1933, ch. 156, sec. 4, p. 360, 47 Okla. St. Ann. sec. 169.

In determining whether error was committed in sustaining the company's demurrer to the evidence there are four legal principles or theories which should be considered.

The first of these is the doctrine of respondeat superior. We have already considered the facts in this respect, except as to the matters involving operation under the company's motor carrier permit and paying the mileage tax. Would those two facts, standing alone, be sufficient for a prima facie showing of the relationship of master and servant? Let us assume that they would, in the absence of other evidence from the plaintiff counteracting the presumption in such cases. But the plaintiff's evidence went further than that. And said further evidence showed the **true** relationship behind what **otherwise** might have been sufficient to constitute a prima facie case toward establishing the relationship of master and servant. It is analogous to the situation where the plaintiff shows negligence of the driver and ownership of the car, and rests, which is sufficient to make a prima facie showing of the relationship (Boling v. Asbridge, 84 Okla. 280, 203 P. 894); but if he then goes ahead and shows that, notwithstanding the defendant's ownership, the relationship of master and servant did not exist, obviously the sustaining of a demurrer would be proper. It is the same here. The plaintiff's evidence conclusively established that the company exercised no control whatsoever over Moore or his driver, and that by all of the proper tests Moore was an independent contractor. Under the circumstances, at least in so far as the doctrine of respondeat superior is concerned, the payment of the mileage tax and operation under the company's permit, with the sanction of the Corporation Commission, in no wise made Moore the servant of the company. In fact, the sanction of the Corporation Commission would tend to negative that idea, for had he been a servant of the company, there would have been no occasion

for obtaining the commission's permission. The use of the permit gave the company no more control over the conduct of Moore or his driver than it otherwise would have had, and, as seen, it neither possessed the right nor exercised any control over him at all. The payment of the mileage tax, and permission to operate under the company's permit, under the facts of this particular case, appear to have functioned solely as a part of the consideration moving from the company. It may have been an illegal consideration; but the fact remains that it was only a part of the consideration and did not alter the relationship of independent contractor and principal, as established by the agreement and conduct of the parties.

Another principle which must be noticed is that all those who join in a violation of the law are usually held accountable to those persons who are specially injured thereby. The argument along this line would be that Moore's truck was illegally upon the highway and that but for the company's permitting him to operate under its permit he probably would not have been there, and thus the accident would not have happened.

Massachusetts adheres to this theory (see cases in A.L.R. annotations, infra), on the premise that the owner thereby contributes to the creation of a public nuisance, but the opinions from other jurisdictions severely criticise that reasoning. New Hampshire has, at least in one instance, subscribed to the same doctrine. Prescott v. Yurchus, 86 N. H. 108, 164 A. 218. The very decided weight of authority, however, is to the contrary, and we too have rejected the Massachusetts view, as will be seen below.

With respect to this phase of the question, the legal situation is similar to instances where one loans his license plate to another, or loans his automobile to an unregistered or unlicensed person without knowledge of carelessness of the driver. In such instances, although the owner is usually violating the law, just as the driver himself is violating the law, he is not held to civil liability for injuries to third persons unless the violation and the injury had causal connection. As stated in the annotation at 16 A.L.R. 1108, 1117:

"It is a well-established rule of law that one who does an unlawful act is not thereby placed outside the protection of the laws, but that, to have this effect, the unlawful act must have some causal connection with the injury complained of. * * *

"By the weight of authority it is held that the fact that a motor vehicle, or the driver of such vehicle, was not licensed, as required by statute, will not charge the owner or operator with liability for injury or damage caused by its operation on the highway, where the failure to obtain a license had no causal connection with the injury or damage."

It was said in Armstrong v. Sellers, 182 Ala. 582, 62 So. 28, that such a violation constitutes only a mere condition, and not a contributory cause, of an injury inflicted by the machine. Although the Massachusetts court held, in McDonald v. Dundon, 242 Mass. 229, 136 N. E. 264, 26 A.L.R. 1243, that a dealer who loaned his license plates to enable the borrower to move the latter's car from one town to another was personally liable for injuries caused by him on the highway, the annotation following the case (126 A.L.R. 1246) correctly observes that while that decision is good law in Massachusetts, it "probably would not be generally followed in other jurisdictions which adhere to the general rule that the fact that an automobile which injures a traveler is not properly registered or licensed does not create a liability unless such fact proximately contributed to the accident." An instance of the majority rule is Buckholtz v. Kastner, 193 Wis. 224, 213 N. W. 329, wherein it was held in a personal injury action that an automobile dealer's violation of a statute by allowing another to use license plates issued to him did not preclude him from asserting that the relationship between him and the driver was other than that of employer and employee, and the court held that as a matter of law the driver was an independent contractor. See, also, annotations at 35 A.L.R. 62, 68; 43 A.L.R. 1153; 54 A.L.R. 374, 381; 100 A.L.R. 920, 926; 111 A.L.R. 1258, 1266. And for a thorough discussion of the question, see Gonchar v. Kelson, 114 Conn. 262, 158 A. 545.

In Marland Refining Co. v. Duffy, 94 Okla. 16, 220 P. 846, 35 A.L.R. 52, we followed the general rule, to the effect that violation of a statute forbidding the operation of unregistered automobiles on the highway does not affect the question of recovery by or against the operator thereof unless there is a causal connection between the violation and the injury, and stated that "We refuse to follow the unreasonable rule of the Massachusetts cases cited by counsel for defendants."

It is clear enough that where the ques-

tion involves only the liability of the driver, the violation of the statute is immaterial unless it has causal connection with the injury. But where the question is liability of the license owner or car owner, the permission of illegal use may become material, not on the issue of negligence itself, but on the issue whether the driver is the servant of the owner. There may be other acts constituting negligence which will bind the owner; and the use of the license, regardless of legality, if there is other evidence tending to show the relationship of master and servant, may constitute part of the proof of that relationship. In other words, the plaintiff may not be offering such evidence to prove negligence at all, but simply to prove the relationship. Paying the mileage and license taxes and permitting another the use of the license, if there is some independent evidence of the relationship of master and servant, should be considered in connection with that evidence. But where there is no such evidence, and, on the contrary, all of the evidence negatives the absence of that relationship, those details in themselves, clearly shown to have been only a part of the consideration, are not sufficient to turn the status of independent contractor into that of servant. A relationship is never adjudged to be that of master and servant unless the master is shown to have had, at least in theory, some control over the acts of the alleged servant which caused the injury. Whatever is said concerning the payment of mileage tax and use of the permit, the undisputed evidence in the present case showed a total absence of this necessary element.

It is suggested in the brief of plaintiff that the defendant cotton oil company should be estopped from denying that Moore, and, consequently, his driver, were its servants. The argument is that the statutes mentioned above are for the benefit of the public; that if the company had not permitted Moore to operate under its permit, he would have been compelled to obtain a Class B permit and post the public liability bond required in such cases, which would have further protected the plaintiff. (We say "further" because there is nothing herein affecting the rights of plaintiff as against Moore and his ·driver.) Assuming that the doctrine of estoppel could properly be applied to an action of this kind, if all of the elements were present, still we find that the cases do not support plaintiff's contention in this respect. In Lind v. Interstate Motor Corporation, 51 R. I. 61, 150 A. 821, a motor bus company was held not liable to one injured by one of its busses which it had loaned to another bus company operating on a route which the lender was not licensed to travel, although a statute prohibited the use of an unlicensed bus. The plaintiff argued that the company owning the bus should be liable on the ·ground of public policy, and furthermore that said owner should be estopped from contending that the driver was not its servant. The court, in denying this contention, said:

"There is no estoppel of the defendant to deny liability; plaintiff was not misled nor deceived by the defendant."

Furthermore, the defendant company points out that the plaintiff did not plead estoppel. The petition was based squarely upon the allegation that Moore was in fact the servant of the company, according to the doctrine of respondeat superior, and the action was not brought on the estoppel theory. The only allegation in the petition which might remotely suggest that theory was that the truck was being operated under the company's permit. It is a familiar rule that one may not rely on estoppel unless he has pleaded it. Skirvin v. Skirvin, 177 Okla. 480, 60 P.2d 765.

It is also suggested that the judgment should be reversed in order to round out the legislative intent in enacting the above discussed statutes. When construing and applying a statute, the legislative intent is taken into consideration, but that does not mean that a court is authorized to create liability where the Legislature has remained silent on the subject and the ordinary principles of law, aside from statute, are against liability. Such a ruling would be an ideal illustration of court legislation. The Legislature has seen fit to impose a criminal liability for violation of said statute (sec. 3711, O. S. 1931, 47 Okla. St. Ann. sec. 172), but has not, as have the Legislatures in some states, imposed civil liability on the violator to those injured by him. In the absence of such express legislative provision, and in the absence of causal connection as discussed above, we feel that we would be exceeding our sphere by imposing liability on the theory that we should do so in order to complete the legislative intent. In speaking of a similar statute, where the same proposition was urged, the Alabama court, in Armstrong v. Sellers, supra, said that the penalties imposed by the statute could not be extended by implication beyond its fair letter, even though

to do so would help to round out the expression of the supposed legislative purpose. The fact that the Legislatures of several states have enacted statutes imposing civil liability, and that our Legislature has not enacted any such provision, is itself significant that the subject is one properly belonging to the legislative department of the government. It may be that the Legislature, in determining the criminal punishment for violation of the statute, considered such punishment sufficient, and we must conclude that had the Legislature desired that liability also be extended over into the civil field, where such liability would not exist at common law, a provision to that effect would have been placed in the statutes.

The judgment is affirmed.

OSBORN. C. J., BAYLESS. V. C. J., and RILEY and WELCH, JJ., concur.