## GREENLAND et al. v. GILLIAM.

No. 34770. Feb. 26, 1952.

*241 P. 2d 384.*

George, George & Springer, Ardmore, for plaintiffs in error.

Joe B. Thompson and Joseph M. Culp, Ardmore, for defendant in error.

GIBSON, J. The parties here occupy reversed positions from those in the trial court, but we shall refer to them as they appeared in the court below. Plaintiffs in error were defendants.

Ray Greenland is the son of Roy A. Greenland and at the time of the accident hereinafter mentioned he was 15 years of age. He had no driver's license and hence was not a person qualified to operate a motor vehicle upon the roads and highways.

On August 22, 1948, about 10 o'clock p.m., Ray Greenland was driving a Willis jeep, owned by his father, Roy A. Greenland, on the streets of the town of Gene Autry, in Carter county. Three other boys, including plaintiff, J. O. Gilliam (bringing suit by his mother as next friend), were riding as his guests. He admits that he was driving at a speed of 30 to 35 miles per hour, when the jeep skidded, struck a concrete slab on a building and was overturned. Plaintiff was severely injured, sustaining three broken ribs, five fractures to his lower jaw and facial lacerations which required twenty-five stitches by a surgeon, and he sustained facial scars and disfigurement which will be permanent.

A verdict for $1,750 signed by ten jurors was in favor of the plaintiff and against both defendants. Both defendants appeal.

There is ample evidence to sustain plaintiff's charge of negligence and the verdict as against defendant Ray Greenland, the driver of the jeep.

The action against the father, Roy A. Greenland, is predicated upon the statute with reference to imputed negli-

gence, 47 O. S. 1951 §308, which provides:

"Any person as herein defined, who is the owner of any motor vehicle and knowingly permits such motor vehicle to be operated by any person who is not qualified to operate a motor vehicle under the provisions of this Act, shall be held civilly liable as a joint tort feasor for any unlawful act committed by such operator."

It is admitted that the driver had no operator's license as required by 47 O. S. 1951 §303. Sec. 305 of the Act provides:

"No person shall cause or knowingly permit his child or ward, under the age of sixteen (16) years, to drive a motor vehicle upon any highway, when such minor is not authorized hereunder or in violation of any of the provisions of this Act."

The petition charges that the father permitted his minor son to operate the jeep contrary to law; that he knew the danger incident to the operation of the vehicle by the son and that the father failed and neglected to make any reasonable attempt to prevent the unlawful and dangerous operation of the vehicle, although he knew or ought to have known of its danger and that injury might result therefrom.

Defendant Roy A. Greenland in his answer admitted that Ray was his son and that he was the owner of the jeep involved in the accident, but specifically denied that the son was driving said vehicle with the knowledge, consent or approval of himself as father, and alleged that the jeep was driven by the son in direct violation of express instructions that the son was not to drive the jeep at any time or place off of defendant's farm and ranch.

Roy A. Greenland was the owner of a ranch of more than 1,200 acres near the town of Gene Autry, where he raised cattle and he had a number of horses including some riding horses. He also operated a saw mill and at times employed from 5 to 30 employees. In the summer of 1948 he operated a riding academy and upon telephone request would send motor vehicles to a nearby air base and haul pilots, who were in training, to the ranch to engage in horseback riding.

Testimony as to whether or not the father knowingly permitted his minor son to operate the jeep upon the highways was in conflict. The father and mother of the boy, his brother, and the manager of the ranch all testified that the father told the boy that he could drive the jeep on the ranch but that the father had admonished his son against driving the vehicle off the ranch, because he had no driver's license. The father, mother and the ranch manager, all persons who were in position to exercise control over the boy in the operation of the jeep, testified that they did not know of his driving the jeep on the highways. But approximately a dozen witnesses, including merchants in the town of Gene Autry, guards at the gates of the air base and employees on the ranch, testified that the boy had driven the jeep and other motor vehicles upon the highways and upon the streets of Gene Autry and at the air base on numerous occasions prior to the accident. It is significant that of the many people on the ranch the people who did not know that the youth was driving the jeep upon the highways were the persons who were in position to exercise control over him.

"Facts may be proved by circumstantial as well as by positive or direct evidence, and it is not necessary that the proof rise to that degree of certainty which will exclude every other reasonable conclusion than the one arrived at by the jury." Stanolind Oil & Gas Co. v. Cartwright, 200 Okla. 633, 198 P. 2d 737.

"A jury may, if they so decide, accept circumstantial evidence on one side and reject positive testimony presented on the same point by the other side, when there is proof of circumstances reasonably tending to establish the fact and support the conclusion reached." M.-K.-T. R. Co. v. Embrey, 168 Okla. 433, 33 P. 2d 481.

Several instances arose during the course of the trial which might have caused the jury to give greater credence to the circumstantial evidence of the plaintiff rather than to accept the positive denial by the father of permission for the son to drive the jeep upon the highways.

In this case the jury was divided ten to two. It is evident that the jury gave careful consideration to the evidence and it is further evident that the conflict in the testimony was of such character as to cause reasonable men to disagree. The trial court, who heard all the testimony, approved the verdict. Under such record this court will not reverse the judgment, when challenged on the ground that the evidence was insufficient to sustain it.

With reference to the subject of imputed negligence defendants cite certain cases from the California court holding that the statute of imputed negligence must be strictly construed. But the vitality and effectiveness of the statute rest in the grant of permission to use the motor vehicle. The permission to use must be determined like any other essential fact in the case.

"The purpose and effect of this statute is to protect the public and to make an owner liable for injury caused by the negligent operation of his car, where his permission to use or operate it may be gathered from all the circumstances surrounding its possession by another at the time it was operated." Steinle v. Beckwith, 198 Minn. 424, 270 N. W. 139.

In urging a strict construction of the Act defendants say that the existence of permission of use cannot be left to speculation or conjecture but must be affirmatively proved as an essential element of the cause of action. This argument goes to the weight of the evidence and not to the strict construction of the statute. A strict construction of the statute would require that before the owner of the vehicle can be held liable as a joint tort feasor it must be shown that at the time of the ac-cident the driver was committing an unlawful act.

Even under such construction the evidence in this case sustains the verdict. The petition charged young Greenland with reckless driving and with operating the jeep on the main street of Gene Autry at a high, unreasonable, excessive and dangerous rate of speed under the circumstances. Reckless driving is defined in 47 O. S. 1951 §121.3 as follows:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than, nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

The evidence reveals that the youth drove the jeep upon a highway on which there was gravel; that he struck certain gravel or a "bump" on the street causing the jeep to skid; that his speed was such that he could not control the vehicle until it had skidded about 40 feet and struck a building off the street and overturned. The driver himself testified to these facts. In so doing he did not have due regard for the surface conditions of the highway, nor did he respect the limitations on his speed required by the statute. Therefore, he was committing an unlawful act as specified in section 308.

In discussing the meaning of the term "knowingly permits", as it is employed in section 308, defendants say that this court has never construed the statute and they quote from the opinion of the Court of Appeals, Tenth Circuit, in the case of Willingham v. Panick, 161 Fed. 2d 614, as follows:

"Appellants' position is that section 308, correctly interpreted, imposes liability only when the owner of the vehicle has knowledge that the operator whom he permits to operate the vehicle is disqualified within the mean-

ing of the Act. With this construction we agree. Appellee, on the other hand, takes the position that the word 'knowingly' modifies the word 'permits', which it immediately precedes. Under such a construction, the word 'knowingly' would be mere surplusage and would add nothing to the meaning of the section because the word 'permit' connotes knowledge and consent. Unless the word 'knowingly', then, is to be mere surplusage and be wholly inoperative, it must apply to the lack of qualifications of the driver. This, in our opinion, is the correct interpretation to be placed upon this section. We think Section 308 is to be construed as though it read in substance as follows: 'Any person as herein defined who is the owner of a motor vehicle and permits such vehicle to be operated by a person, knowing such person not to be qualified under the provisions of this Act, shall be civilly liable as a joint tort feasor. . . .' "

We agree with this construction except that we shall add "for any unlawful act committed by such operator", as provided in the statute. In the instant case it is admitted that Roy A. Greenland, the father of the youth and owner of the motor vehicle, specifically permitted the boy to operate the jeep about the ranch; that he saw the boy driving the jeep. The father admits that he knew his son had no operator's license permitting him to drive upon the highways. The father knew that the son was a person not qualified to operate the vehicle upon the highways. By its verdict the jury has determined that the father, with such knowledge, permitted the youth to drive the vehicle upon the highways. Under the statute the father is civilly liable as a joint tort feasor, since he was committing an unlawful act resulting in the accident.

Defendants contend that the trial court committed reversible error in admitting certain incompetent testimony, said to be prejudicial. This was testimony to the effect that the minor defendant was driving the jeep on the streets at a high rate of speed on Sunday afternoon preceding the accident

later in the evening. This testimony was disputed by the driver. It was offered on the theory that it tended to prove that the youth was a known reckless driver. The court limited its application to liability of the son and excluded the same as to the father. There is no showing that the jury was prejudiced by this testimony.

Defendants further urge error in the giving of instruction No. 9, and say the instruction is not supported by the evidence. We have examined the instructions as a whole and we believe that the theory of the defense was fully presented and covered by the instructions. Many of the instructions were very favorable to defendant Roy A. Greenland and when considered as a whole they adequately covered the law of the case.

"Instructions, as a general rule, should be construed together as a whole, and, when so construed, if they properly state the law, they will not be held to be objectionable, although some of them, or portions thereof, standing alone, might be misleading or may be technically inaccurate." Southwest Stone Co. v. Hughes, Adm'r, 198 Okla. 257, 177 P. 2d 489.

See, also, Elam v. Loyd, 201 Okla. 222, 204 P. 2d 280.

Affirmed.

HALLEY, V. C. J., and CORN, DAVISON, and JOHNSON, JJ., concur. WELCH and O'NEAL, JJ., dissent.