OTIS ELEVATOR COMPANY, a Corporation, and Harry E. Hampton, Plaintiffs in Error,

v.

Goldie MELOTT, Defendant in Error.

No. 35892.

Supreme Court of Oklahoma.

Nov. 16, 1954.

Rehearing Denied Feb. 15, 1955.

Application for Leave to File Second Petition for Rehearing Denied March 8, 1955.

Mart Brown and Clark Hurd, Oklahoma City, John L. Goode, Shawnee, for plaintiffs in error.

Stevens & Winterringer, Shawnee, for defendant in error.

WELCH, Justice.

Mrs. Goldie Melott sued Otis Elevator Company, a corporation, and Harry E. Hampton for damages for personal injuries which she sustained. Verdict and judgment were for the plaintiff and against the defendants. The defendants contend the trial court was in error in overruling defendants' demurrer to plaintiff's evidence and defendants' motion for a directed verdict.

The circumstances in proof show that the plaintiff was injured when she fell into an elevator shaft in a building belonging to the Masonic Temple Association. The plaintiff was employed by the said Association to operate an elevator in the said building. The building is a six story structure and has an elevator shaft containing two elevators. The shaft extends from a point above the level of the sixth floor to a point below the basement floor. The elevators are about two feet apart when located at the same floor level and will hereinafter be referred to as the East Elevator and the West Elevator. The shaft is equipped with separate sliding doors at each floor level of the building for entrance to the elevators. At each said entrance place and inside the shaft there is a jointed metal arm which is attached at one end to the shaft wall, and at the other end to the shaft door. When the arm is in horizontal position and fully extended, the door is closed and is locked in such position and when the arm is pulled downward at the joint it serves to release the door from a locked position and to slide the door open. There is a small round hole in each shaft door located slightly above the place of the joint in the horizontal arm. A key or metal rod may be inserted through the door from outside the elevator and used to push downward the arm at its joint and release the door from a locked position.

At the time of the plaintiff's fall into the elevator shaft and for some years before, the defendant corporation had been under contract with the building owner to make monthly inspections of the elevators and accessory equipment and to report any defects found. The defendant, Hampton, as the employee of the said corporation had made such periodic inspections.

According to testimony of the plaintiff she had been operating the west elevator for a period of five years during the work-days of each week from 8:30 a. m. to 5 p. m. and a Mrs. Williams had been operating the east elevator for three years during the work-days thereof from 7:15 a. m. to 4:00 p. m. It was the rule of the building owner and the custom and practice for each operator to be off duty one hour each day at lunch time and for a 15 minute rest period at mid-morning and mid-afternoon each day. Mrs. Williams' lunch period was from 11 a. m. to 12 noon each day, and the plaintiff's lunch period was from 12 noon to 1:00 p. m. Their respective rest periods were taken at separate times each morning and afternoon, it being the rule, custom and practice to keep one elevator operating at all times during each work-day from 7:15 a. m. to 5 p. m. Each operator was furnished an elevator key and required to keep said key inside the elevator at all times that the elevator was in operation. According to rules, custom and practice, each time an operator left her elevator at rest periods, lunch period, and at the end of the day, the elevator was parked at the street floor level of the building, the lights inside the elevator were turned off, the elevator key was removed from its hook or place inside the elevator and on departure of the operator from the elevator the door was closed. The operator would then place the elevator key on a large mail box that was attached to a

wall of the building and near the elevator entrance. On return to work, and to put the elevator in operation the operator would obtain the key from the mail box and insert the key in a hole through the shaft door and thereby move the arm locking device inside the door and slide the door to an opening sufficient for insertion of fingers or hands whereby the door would be further opened to permit entrance into the elevator. The elevators are without windows and are dark inside when the shaft doors are closed unless the lights inside are on. The switches for the lights are inside the elevators.

The plaintiff testified that the defendant Hampton had made inspections of the elevators on an average of once each month for a period of three years prior to the date she sustained her injury, and such inspections were made at various times of the day. On several occasions the defendant Hampton had worked on the doors to the elevators. On one occasion when she came to work at 8:30 o'clock in the morning she found the said·defendant and the building superintendent working on the west elevator; that Hampton had at times inspected and worked on elevators during a rest period or lunch period of the plaintiff, or the rest period or lunch period of Mrs. Williams. On one occasion the plaintiff had closed her elevator and left her key on the mail box and gone to lunch and when she returned no key was on the mail box and she pushed a button for the elevator service and she heard the elevator in movement and that it stopped at the street floor level and doors were opened from the inside and the defendant Hampton and the building superintendent, and her key, were inside the elevator.

The plaintiff testified that on an occasion in the month preceding the date of her injury that the defendant Hampton and the building superintendent had been working on her elevator and were working in the penthouse at the top of the elevator shaft when they rang for the elevator and that they came down on the plaintiff's elevator; that Mrs. Williams had left her elevator for her 2 o'clock off duty rest period; that Hampton went over to the east elevator door and took something and opened the elevator door and requested the plaintiff to take over the operation of Mrs. Williams' elevator. The plaintiff noticed a key on the mail box and said to Hampton, "Why, you didn't get Mrs. Williams' key off the box. She doesn't know I'm over here running her elevator." Hampton said, "That's right. I'm glad you noticed it." The plaintiff walked out and got the key from off the box and brought it into the east elevator and began operating the east elevator.

According to the testimony of the plaintiff, on the day of her injury the defendant Hampton and the building superintendent were working on the east elevator, during the regular time for Mrs. Williams' lunch period from 11 a. m. to 12 noon. The plaintiff was operating the west elevator in regular passenger service. At 12 o'clock, and the time when Mrs. Williams was due from lunch, the plaintiff was bringing down a load of passengers when she heard the door to the east elevator open an heard that elevator in movement and heard it stop at the third and fourth floor levels. The plaintiff continued downward to the street floor level where she unloaded her passengers and turned out the light in the west elevator and removed the elevator key and closed the door thereto. She placed the key on the mail box and went out to lunch. She returned from lunch at 1:00 o'clock and removed the key from the mailbox and unlocked the door to the west elevator. She then pushed on the door to slide it open and while she was pushing and the door was opening she stepped into the opening and fell into the elevator shaft. She fell a distance of about sixteen feet. She landed on her foot and then to a sitting position and then fell over on her back at the bottom of the elevator shaft. From there she looked up and observed the east elevator going up and down the shaft and the west elevator parked near the top of the shaft. She heard Mrs. Williams' voice issue from the east elevator, and Mrs. Williams) said, "Goldie, (the plaintiff), has fallen down the elevator shaft." She then heard the defendant Hampton's voice issuing from the west elevator or from the penthouse above the elevator and he said, "Where is she?" Immediately she heard the door to the west

elevator open and close and saw and heard the elevator descend to the street floor level. She then heard fast steps in rapid succession on the stairway leading from the street floor level to the basement floor level, and immediately thereafter the shaft door at the basement floor level opened and Hampton and the building superintendent jumped from the opening into the bottom of the shaft where the plaintiff lay.

Several witnesses testified that on the day of the plaintiff's injury they had ridden the east elevator during the time from 12 o'clock noon to 1 o'clock p. m., and that at such times the east elevator was being operated by Mrs. Williams.

In an action for damages based on negligence a demurrer to the plaintiff's evidence presented no question as to the plaintiff's negligence. The sole question thereby presented is whether the evidence in any reasonable inference shows the defendant guilty of negligence, a proximate cause of the plaintiff's injury. Breno v. Weaver, 208 Okl. 14, 252 P.2d 487. A demurrer to evidence admits the truth of all the evidence and admits the existence of all of the facts which the evidence, together with all inferences that may reasonably and logically be drawn therefrom, in the slightest degree tend to prove. Roy v. St. Louis-San Francisco Ry. Co., 153 Okl. 270, 4 P.2d 1038.

Herein, excluding any negligence on the part of the plaintiff, it is apparent that the removal of the elevator from the street floor level during the absence of the plaintiff was a cause of the plaintiff's injuries. The charge of negligence against the defendants, the cause of the plaintiff's injury, depends on the ultimate fact that Hampton imprudently removed the elevator.

In the foregoing testimony it is made to appear that Hampton was aware of the custom and practice of the elevator operators to close and park their elevators at the street floor level when they went off duty at lunch time or otherwise, and at such times to leave their elevator key on the mail box, and that a key on the mail box when an operator returned was a signal to the operator that the elevator was in place at the street floor level.

According to testimony above noted, the defendant Hampton was on the premises where the plaintiff was employed on the day that the plaintiff was injured, and Hampton was there for the purpose of inspecting the elevators. Hampton was in the business of his employer, the corporate defendant.

On former occasions in making inspections or servicing the equipment the defendant Hampton had operated and directed the operations of the elevators and had opened the shaft door to the elevator without use of the operator's key. On the date of the plaintiff's injury she closed and parked the west elevator at the street floor level and left her key on the mail box and went to lunch. At the time she closed the elevator the east elevator was being operated. In the time of her absence for lunch several persons rode on the east elevator being operated by Mrs. Williams. When the plaintiff returned from her lunch her key was on the mail box, and at the time she used the key to open the shaft door to the west elevator Mrs. Williams was operating the east elevator and the west elevator was parked at or near the top of the elevator shaft and the defendant Hampton was in or about the west elevator.

We find the circumstances in proof suggest, and reasonably tend to prove, that Hampton removed the elevator from the street floor level in the absence of the plaintiff and at a time when the plaintiff's key was on the mail box, and that Hampton so acted in the knowledge that the plaintiff might return and act on the assumption that the elevator was at the street floor level and to her possible injury; that plaintiff did so act and to her injury. Accordingly, we find there was evidence authorizing an inference of negligence of the defendants, a cause of the plaintiff's injury. We conclude that defendants' demurrer and defendants' motion for directed verdict were properly overruled.

The defendants suggest that plaintiff relies entirely on circumstantial evidence to establish her allegations and that there was

no direct evidence to establish any of the ultimate facts, but the contrary.

The defendants cite the rule against the piling of inference on inference as the basis of a conclusion. But here we have circumstances in proof tending to establish the ultimate facts from which the inference of negligence may be drawn. There are evidentiary facts to support a conclusion of negligence and resulting injury.

■ In the consideration of the defendants' motion for a directed verdict, likewise as in consideration of the defendants' demurrer to the plaintiff's evidence, the evidence offered by the defendants and directed against the circumstances shown in the plaintiff's proof may not be considered. The credibility of witnesses is a matter for the exclusive determination of the trier of the facts. The jury, if it so decides, may accept circumstantial evidence on one side and reject positive testimony presented on the same point by the other side, when there is proof of circumstances reasonably tending to establish the facts and support the conclusion reached. Greenland v. Gilliam, 206 Okl. 85, 241 P.2d 384.

■ It is a settled rule that if there is any evidence, including every reasonable inference the jury could have drawn from the same, reasonably tending to support the verdict this court will not reverse the case for insufficient evidence. Reed v. Scott, 50 Okl. 757, 151 P. 484.

■ The defendants complain of the instructions and assert there was fundamental error in that the court failed to give any instructions outlining the parties' respective theories with reference to the elevator keys.

In the instructions in a statement of all the allegations of the plaintiff's petition there is mentioned an allegation concerning a custom and practice of the elevator operators in their use of elevator keys, and allegations to the effect that the plaintiff on the day of her injury, at 12:05 p. m. parked the west elevator and placed her key on the mail box and went to lunch and returned at 1 p. m. and removed the key from the mail box and used it to open the west elevator door. There follows a statement of the substance of the defendants' answer wherein the defendants generally deny all the allegations of the plaintiff's petition, and plead contributory negligence and unavoidable accident.

In the court's instruction numbered two the jury was advised that the statement of the pleadings defines the issues to be tried, and the jury was told that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence all of the material allegations of the petition, and unless the plaintiff has proved these allegations by a preponderance of the evidence, verdict must be for the defendants.

In the court's instruction numbered five the issue is presented as to whether or not the defendant Hampton moved the west elevator just before the plaintiff's accident, knowing of the existence of certain customs of the manner of operation of the elevators by the plaintiff.

We are of the opinion that the instructions in a general way covered the issues pertaining to the keys and all the decisive issues raised by the pleadings and evidence. It is noted that the defendant made no request for a more detailed instruction in reference to the elevator keys.

■ In Sanders v. C. P. Carter Const. Co., 206 Okl. 484, 244 P.2d 822, 824, said the Court:

"It is the duty of the trial court in instructing the jury on its own motion to instruct upon the decisive issues raised by the pleadings and evidence in the case; but where the trial court does in a general way in its instruction instruct as to all of such issues and either party desires a more specific instruction as to any of such issues it is his duty to request such an instruction. In the absence of such request the court is not required to do so."

We hold the foregoing rule is here applicable.

■ The defendants assert that instruction numbered five given by the court was erroneous and prejudical to the defendants in that same invades the province of the jury.

In instruction numbered five the jury was advised that the plaintiff alleges in her petition certain facts and events. The jury was instructed that if they find these certain facts and events from a preponderance of the evidence in the case, and further find that plaintiff was not guilty of contributory negligence, then the jury would be warranted in finding a verdict for the plaintiff.

In the instruction it is not assumed that any fact has been proved. The jury is instructed that it is to determine from the evidence in the case if a certain state of facts as alleged has been proved. We find no basis for the charge that the court invaded the province of the jury.

■ The defendants contend that in instruction numbered five there is set out a material issue not raised by the pleadings and which confused and misled the jury and prejudiced the rights of the defendants.

Arguments rest on an asserted distinction between an allegation that Hampton moved the elevator and a charge that the elevator was moved by Hampton personally, or at his direction.

In the instructions it is set out that plaintiff alleges in her petition that Hampton moved the west elevator at a certain time and that Hampton was possessed of certain knowledge. There follows an instruction upon an hypothesis of the evidence showing that the west elevator was moved by Hampton personally, or at his direction, at the certain time and that Hampton was possessed of certain knowledge.

Obviously, any responsibility of Hampton for moving the elevator under particular circumstances and knowledge would be the same as if he caused the elevator to be moved under the particular circumstances and knowledge, and that an allegation that he moved the elevator under particular circumstances is a sufficient basis for the introduction of evidence tending to prove he either moved the elevator or caused it to be moved under the said circumstances.

In the instruction we find no departure from the issues raised in the pleadings and evidence, nor any reason to believe that the jury was confused and misled.

The defendants contend the court erred in refusing to give certain requested instructions.

■ In defendants' requested instructions numbered 8 and 9 the court was requested to instruct the jury on the hypothesis of a finding from the evidence that a third party, the Masonic Building Association, was guilty of negligence, the cause of the plaintiff's injury. We do not find that such an issue was presented by the pleadings and evidence, and accordingly hold that the requested instructions on such issue were properly refused.

■ In defendants' requested instructions numbered five and ten the court was requested to instruct the jury concerning the plaintiff's duty of exercising care for her safety and concerning the defendants' contentions as to certain conclusions and circumstances in proof. Upon these bases the court was requested to instruct the jury respecting a finding that the plaintiff was guilty of negligence and that such contributed to her injury.

We find the propositions stated in the requested instructions were substantially covered by the instructions given, wherein the court set forth a full statement of the pleadings of the parties and instructed on the burden of proof and defined the terms, negligence, ordinary care, proximate cause and contributory negligence.

It is not error to refuse to give requested instructions where the propositions therein stated are substantially and correctly covered by other instructions given. Eagle-Picher Mining & Smelting Co. v. Drinkwine, 192 Okl. 662, 141 P.2d 66.

■ The defendants assert the trial court erred in refusing to grant a mistrial because of improper and prejudicial remarks to the jury made by the counsel for plaintiff in his closing argument.

During closing argument to the jury counsel for the plaintiff stated: "You cannot commit legal error in returning a verdict for the plaintiff for the amount sued for if you find from a preponderance of the evidence that the allegations of her petition are true. If this were not so, the

court would not have given you this case, but would have taken it away from you."

The remarks of counsel were improper in so far as they might be construed as tending to argue or imply that the judge favored plaintiff's side, however, any such effect of the remarks appears undone in the fact that the court promptly sustained an objection to the remarks. There were no further remarks or argument of similar tenor or tendency, and apparently the trial court was of the view the remarks in question created no impression on the jury, and would not influence their verdict. Upon an examination of the record we are of the opinion that the jury was not improperly influenced by the argument and hold that the impropriety of the plaintiff's counsel, if any, did not affect the substantial rights of the defendants.

 The defendants assert that the judgment in the amount of $67,000 is so excessive as to indicate conclusively that the jury was actuated by bias, prejudice, or passion, and that the trial court committed reversible error in not allowing defendants' motion for new trial.

According to testimony and evidence the plaintiff, from the fall into the elevator pit, sustained a permanently painful and disabling injury to her pelvis, spine and body, and at the time she was injured she was employed at a salary of $100 per month, and had a life expectancy of thirty years.

There is no fixed rule or standard whereby damages for pain and suffering can be measured and the amount to be awarded for pain and suffering must be left to the judgment of the jury, subject only to correction by the courts for abuse and passionate exercise. 15 Am.Jur. Damages, § 71.

Herein there is evidence to show that as a result of her injury the plaintiff suffered detriment in a large amount in loss of earning capacity and that as a consequence of said injury she has suffered great pain, and in reasonable certainty or probability such pain and suffering and loss of earning capacity will continue for the balance of her life. We cannot say that the amount assessed as damages by the jury has no reasonable relation to the evidence. We

find in the record no evidence of passion or prejudice of the jury toward defendants, and no reason to believe such existed by reason of the amount of the verdict.

The judgment is affirmed.

JOHNSON, DAVISON, ARNOLD and BLACKBIRD, JJ., concur.

HALLEY, C. J., CORN, O'NEAL and WILLIAMS, JJ., dissent.

O'NEAL, Justice (dissenting).

I respectfully dissent, as I cannot agree, with the majority that the record discloses sufficient evidence to establish the negligence of the defendant, Hampton, as an employee of the Otis Elevator Company, to sustain the verdict rendered. The majority opinion tacitly concedes that there is a total absence of direct evidence to sustain plaintiff's allegation that Hampton either inspected or operated the west elevator during the noon hour, or immediately prior to the accident to plaintiff at 1:00 o'clock when she returned for work.

The evidence of Sullivan, the building manager of the association, of King, its engineer, of Mrs. Williams, the other elevator operator, and of Hampton, is to the contrary. The majority opinion states that the record discloses certain circumstantial evidence which supports the conclusion reached.

It is conceded that a jury may accept circumstantial evidence and reject positive testimony in arriving at its verdict. One has never known, however, until now that a verdict may be sustained where the essential facts of negligence charged is based upon a mere inference or presumption without more. When the plaintiff returned from her lunch hour, according to her own testimony, she did not see Mrs. Williams, the operator of the east elevator, nor King, the association's engineer, nor the defendant, Hampton. After getting an elevator key, located on a mail box near the east wall of the building, she unlocked the door of the west elevator and backed into the open shaft.

Much is said in the majority opinion that on a previous occasion the plaintiff, when

returning from lunch, found no key upon the mail box, so she pressed the button on the ground floor and when the door was opened Hampton and the association's engineer were inside of the elevator. That on another occasion, Hampton and the building engineer were working on her elevator in the penthouse, and that she carried them down to the street entrance; that Hampton went over to the east elevator and opened the elevator door; that plaintiff observed an elevator key on the mail box and asked Hampton why he didn't get Mrs. Williams' key off of the box; that Mrs. Williams doesn't know I am going to operate her elevator and that Hampton said: "That's right. I am glad you noticed it."

Upon these unconnected transactions, and upon the circumstance that after plaintiff fell into the elevator shaft, that she heard the voice of Hampton which she assumed came from the elevator loft, and also heard the sound of footsteps, apparently emanating from the basement stairway, that an inference arises that the proof reasonably sustains the charge that Hampton operated the west elevator at the time of the accident. Mrs. Williams, King, Sullivan and Hampton gave direct, positive and unimpeached testimony that only Mrs. Williams operated the west elevator from 12:00 to 1:00 p. m. on the day of the accident. Evidently, the majority opinion deems it unimportant to refer to the undisputed evidence that the two keys for the elevators were identical in appearance, and were used interchangeably in the opening of the elevator doors. The inference is thus indulged that the presence of a key on the mail box was notice that the west elevator was not then in use. That inference is entirely dissipated in view of the plaintiff's testimony that she was informed at the noon hour and immediately before going to her lunch, that the east elevator was still under repair. The evidence is also without contradiction that it was the uniform custom that one of the elevators be operated at all times.

That plaintiff had been engaged as the operator of the west elevator for approximately five years prior to the accident involved herein; that Mrs. Williams was the operator of the east elevator; that the Masonic Temple Association Building is a six story office building, and that the elevator entrances are located on the street floor; the boiler room and engineer's workshop is located in the basement of the building. At each floor level, including the basement, there is a dual-paneled sliding shaft door, and behind each door inside of the shaft there is a handle-locking arm device. Under regulations of the Association one elevator was to be kept in constant use.

At the hour of 11:00 o'clock a. m., Mrs. Williams went to lunch and upon her return at 12:00 o'clock plaintiff had her lunch period. At these lunch periods it was their habit and custom to stop their elevator at the street floor entrance, turn off the light in the elevator, close the door and place the elevator key upon the mail box on the east wall of the building. These keys were a cylinder like rod approximately six to eight inches in length and were identical in appearance and would unlock either elevator door. By inserting the key in the elevator shaft door and by exerting pressure the elevator operator would break down the locking arms and by pushing the door apart would then enter the elevator. Hampton arrived at the building on December 7, 1951, at approximately 10:30 in the morning; that he and King, the Association's engineer, took over the east elevator then being operated by Mrs. Williams, for inspection and minor repairs. Near the hour of 12:00 o'clock Hampton and King stopped work upon the east elevator and went out for lunch. At 12:00 o'clock plaintiff went out for her lunch and returned approximately at the hour of 1:00 o'clock. Upon her return to the building she did not see either Hampton, King, or Mrs. Williams. She thereupon procured an elevator key from the top of the mail box, unlocked the west elevator door, stepped in and fell to the basement of the elevator shaft. She was not unconscious and as she lay in the bottom of the shaft she could observe a light in the east elevator then in operation; that she heard Mrs. Williams say: "Goldie has fallen down the elevator shaft" and heard Hampton say: "Where

is she?" That she heard Hampton's voice which came either from the penthouse or from the west elevator which appeared to her to be on an upper floor; that immediately the west elevator came down to the main floor and stopped and she heard footsteps coming down the stairs to the basement, and that shortly thereafter Hampton and King opened the basement elevator door and removed her from the shaft pit.

King, the Association's engineer, called by plaintiff, testified that at 1:00 on December 7, 1951, he was in the boiler room in the basement of the building at which time Hampton came to the door of the room and said: "There is someone has fallen in the elevator pit. Let's get something to open the door with." They immediately got a little rod off of the work bench, opened the elevator door and removed Mrs. Melott from the pit.

After the court had overruled defendants' demurrer to plaintiff's evidence they submitted testimony tending to establish the following facts: Hampton testified that he and King worked on the east elevator until approximately 12:00 noon and that King parked the east elevator on the street level, closed the door and placed the key on the mail box; that at approximately 1:00 o'clock he returned to the building and went down to the basement to contact King; that a few moments thereafter some man ran down the stairway and yelled, "Someone fell down the elevator shaft." That King at the time was in the boiler room and that King procured a small rod with which he opened the elevator door and they removed the plaintiff from the elevator shaft.

King, the Association's engineer, being recalled by the defendants, testified that at approximately 10:40 on the morning of December 7, 1951, he took over the east elevator then being operated by Mrs. Williams, and advised her that he and Hampton were going to inspect it; that they had not completed their inspection at 12:00 and that he parked the east elevator on the street floor entrance, closed the door and put the key on top of the mail box; that Hampton went out for lunch and that he had his lunch in the basement of the building; that the east elevator was kept out of use on that day until approximately 2:00 o'clock in the afternoon; that from the time of taking over the east elevator at 10:30 in the morning to the hour of 2:00 in the afternoon it had not been operated by either elevator operator; that at approximately the hour of 1:00 he was in the boiler room in the basement of the building when Hampton told him that someone had fallen in the shaft; that they procured a small rod and opened the basement's elevator door and found plaintiff in the pit; that he asked her: "Goldie, how in the world did you happen to walk off in that elevator pit?" And she said, "Mr. King, I just wasn't thinking."

Mrs. Williams testified that she had operated the east elevator two years prior to the accident on December 7, 1951; that at noon on the day of the accident, when she returned from her lunch at 12:00 o'clock she asked Mrs. Melott if King and Hampton had finished their work on her elevator. When Mrs. Melott advised her that the work on the east elevator had not been completed the witness took over the west elevator and continued to operate it exclusively from 12:00 noon until approximately 2:30 in the afternoon at which time repairs on the east elevator were completed; that all passenger service during said hours was carried on in the west elevator by the witness; that at the time the plaintiff fell into the shaft the witness was unloading passengers off of the west elevator on an upper floor of the building. As she was lowering the west elevator to the street floor she heard a noise or some racket and when her elevator arrived on the street floor she told a man standing in the lobby that Mrs. Melott had fallen in the elevator shaft and requested him to go down to the basement and call Mr. King; that shortly thereafter she ran the west elevator down to the basement and brought the plaintiff up to the street floor.

Mr. Sullivan, the building manager of the Association, testified that he maintained an office on the fourth floor of the Association's building, and that immediately prior to the accident he observed Mrs.

Williams operating the west elevator; that the east elevator had not been in use from approximately 10:30 in the morning until approximately 2:00 in the afternoon.

Hampton, being recalled as a witness, testified that under the contract between the Otis Elevator Company and the Association he made inspections of the elevators at monthly periods; these inspections were made at various hours during the day and always made in company with Mr. King, the Association's engineer; that on the day in question they examined some defective wiring on the east elevator, the witness riding on top of the car being operated by King; that at the noon hour the east elevator was parked on the street floor entrance, and that he left the building for his lunch; that when he returned at 1:00 o'clock he went down to the basement of the building to get in touch with King; that a man ran down the stairway and yelled, "Someone fell down the elevator shaft." That he immediately contacted King, who was then in the boiler room, and that they opened the east elevator door and did not see any one, then they opened the west elevator door and saw the plaintiff lying in the pit; that prior to the accident neither he nor King had touched the west elevator; that the west elevator was not inspected until sometime after 2:00 in the afternoon. He further testified that he had no knowledge as to when either of the elevator operators went out to their lunch and what instructions, if any, were given them by the Association with reference to handling the keys to the elevator doors.

A review of the entire record leads me to the conclusion that the trial court erred in overruling defendants' demurrer to plaintiff's evidence, and likewise erred in refusing to sustain defendants' motion for a directed verdict.

With the utmost respect to my associates, I think they have based their conclusion upon the tenuous circumstances of unrelated instances set out in the opinion, which, at most, creates an inference of negligence, unsupported by either positive or circumstantial testimony. By adding one inference upon another the majority has been lead into a labyrinth of error in their disposition of the case.

WILLIAMS, V. C. J. (dissenting).

I do not agree with the majority opinion in so far as it approves the instructions given by the trial court and approves the refusal of the court to give certain requested instructions.

Instruction No. 5 given by the court in effect advised the jury of the state of facts contended for by plaintiff and that if they found such state of facts to be true they would be warranted in finding a verdict for the plaintiff. Nowhere did the court tell the jury that they must further find that the state of facts contended for by plaintiff constituted negligence before they would be warranted in finding a verdict for plaintiff. Such omission was, of course, error of the most fundamental nature. In Clanton v. Chrisman, 174 Okl. 425, 51 P. 2d 748, 749, we said:

"It will be seen from the foregoing that the court gave to the jury the contention of the plaintiff, and instructed that, if the jury believed that state of facts had been sufficiently proved, the verdict should be for the plaintiff. Undoubtedly, the court should have further instructed the jury that it must believe the things enumerated constituted negligence, and that such negligence was the proximate cause of injury to the plaintiff. This rule is so well established in Oklahoma in a long line of decisions, and is so well known, and so elementary in law, that reference to decisions and authorities would appear to be futile."

The effect of such instruction and omission is to advise the jury that the state of facts contended for by plaintiff constituted negligence on the part of defendants and to withhold from the jury the determination of whether such state of facts did constitute negligence on the part of defendants. The effect of such instruction is further confirmed by the court's instruction No. 8, which was as follows:

"Should you find from a preponderance of the evidence herein that the defendant Hampton, as agent of defendant Otis Ele-

vator ·Company, *was guilty of any of the acts of negligence alleged in plaintiff's petition,* and that such negligence was the direct and proximate cause of the injury, if any, to the plaintiff, and plaintiff was not guilty of contributory negligence, then your verdict should. be for the plaintiff and against the defendants;" (emphasis ours).

Here again the court in effect told the jury that the acts of defendants alleged by plaintiff constituted negligence. .It is well settled that what is or what is not negligence in a particular case ordinarily is a question for the jury, and not the court. In this connection see Littlejohn v. Midland Valley Railway Company, 47 Okl. 204, 148 P. 120; Swift v. McMurray, 133 Okl. 104, 271 P. 635; Gypsy Oil Co. v. Green, 82 Okl. 147, 198 P. 851.

In their requested instructions Nos. 8 and ·9 defendants requested the trial court to submit to the jury the issue of third party negligence, that is, negligence on the part of the Masonic Building Association and its employees. The court refused to give these instructions and did not give any others of a comparable nature in lieu thereof. Defendants' answers in the case consisted of a general denial and pleas of contributory negligence and unavoidable accident. Defendants' witness Mrs. Williams, an employee of the Masonic Building Association, testified positively that it was she who moved the west elevator immediately prior to the time plaintiff opened the west elevator shaft door and fell into said elevator shaft. Defendants' evidence further shows that King, the building engineer, an employee, servant or agent of the Masonic Building Association, removed an elevator key from the east elevator shortly after 12:00 noon and placed said key taken from said elevator upon the mailbox; that the elevator key from the east elevator and that from the west elevator were identical in appearance and interchangeable. It was admitted by all parties that under the rules, regulations and practices of the Masonic Building Association and its employees the elevators, when not in use, were to be parked at the main floor level; that the elevator keys were to be placed on the mailbox when the respective elevators were not in use; that one elevator was to be kept in operation at all times during the working day and that the elevator shaft doors were to be kept closed at the main floor level even though an elevator was stationed there unused. It was also shown, of course, that plaintiff was an employee of the Masonic Building Association. It was defendants' theory of the case that plaintiff's injuries were proximately caused by negligence on the part of the Masonic Building Association and its employees or by plaintiff's negligence, or a combination of the two. There was ample evidence reasonably tending to support such theory and defendants were therefore entitled to have the jury instructed thereon. It is well settled that in a case tried to a jury it is the duty of the court to submit by appropriate instructions the theory of the defense, where the evidence reasonably tends to support the same, and failure so to do, at the request of defendant, constitutes prejudicial error. Atchison, T. & S. F. R. Co. v. Jamison, 46 Okl. 609, 149 P. 195; Spurrier Lumber Co. v. Dodson, 30 Okl. 412, 120 P. 934. Thompson v. Galion Iron Works & Mfg. Co., 201 Okl. 182, 203 P.2d 438. In the last cited case the plaintiff sued the defendant railroad for damages to a road grader owned by plaintiff but leased to and operated by a third party at the time of the accident. We held that the trial court erred in refusing to give a requested instruction to the effect that if the jury should find that the damage to the grader was caused solely by the negligence of the third party operator thereof, the verdict should be for defendants.

Plaintiff argues that defendants did not plead· third party negligence and were therefore not entitled to the requested instructions. We have held the contrary to be true, however, in Cabiniss v. Andrews, Okl., 258 P.2d 180. The pleadings in that case were the same as in the case at bar and we held that the issue of a third party's negligence, which was not tendered directly by the pleadings, but which the evidence tended to support, was properly submitted to the jury, since the trial court must instruct upon every reasonable theory of

either party finding support in the evidence. In reaching such conclusion we noted the general rule that under a general denial and a plea of unavoidable accident the defendant is entitled to rely upon any state of facts which tends to disclose lack of negligence upon his part, without the necessity of pleading such matters which are not in the nature of an affirmative defense.

In view of the foregoing errors it is my opinion that the cause should be reversed and remanded with instructions to grant a new trial, and I therefore respectfully dissent.