Roy BENNETT and Margaret Bennett, Appellants,

v.

MORRIS FARRAR TRUCK COMPANY, a corporation, and Charles LeRoy Mize, Appellees.

No. 46229.

Court of Appeals of Oklahoma, Division No. 2.

Feb. 19, 1974.

Released for Publication by the Court of Appeals March 14, 1974.

Murphy & Evans, Kingfisher, for appellants.

Shutler, Baker, Simpson & Logsdon, Kingfisher, for appellees.

BRIGHTMIRE, Presiding Judge.

It was a lazy summer afternoon the day 13-year-old Kevin Bennett rode a new 50

cc Suzuki motorbike southward on a straight nearly level western Oklahoma blacktop farm to market road. Overtaking him was a large Mack truck tractor pulling a tank trailer. Suddenly the mismatched vehicles collided.

Only the truck driver survived. Kevin's parents brought this action to recover damages they claim resulted from their young son's wrongful death.

A jury verdict favored defendants. Plaintiffs appeal contending the trial court should have granted them a new trial because (1) the verdict underlying the judgment is unsupported by sufficient evidence; (2) the trial was fraught with legal errors; (3) the court erred in refusing certain instructions requested by them; and (4) there existed no evidentiary basis for telling the jury that they could find plaintiffs were guilty of contributory negligence.

It was a typical warm August day in 1971. The late afternoon sun was still high in the cloudless sky as Kevin drove through the farm gate and turned his motorbike eastward on the section-line road bordering on the north 480 acres of farmland leased by his father. No doubt the rush of hot wind created by the forward thrust of his cycle felt good pushing against his body. It seemed safe enough out on this lonely country road dividing uninhabited fields of green. Not a soul around save his father and older brother whom he left back a ways plowing. Very shortly he would be 14 and eligible for a license to operate the exciting trail bike on the road. Sure his father had told him several times to stay on the farm with the new motorbike . . . and he had heard the chief of police in the nearby town of Hennessey tell his father that anyone under 14 could not obtain a permit to drive a motorbike on any public road. But Kevin had been driving a pickup and tractor around the farm for some time; he had become familiar with various rules of the

road; there could be no danger just this once because he knew what to do and he would be very careful to strictly abide by the rules of the road. So he must have thought.

Soon he came to a stop sign protecting an intersecting blacktop farm to market road. He stopped and looked up and down this alluring highway stretching straight as an arrow north and south. To the north he could see a truck approaching in the distance. Concluding the truck was far enough away he pulled forward and turned south on the paved road. He rode close to the west edge of the highway for about 400 feet then put out his arm signaling an intent to turn left into a private driveway and began angling toward the southeast across the center line of the road.

The turn was never completed. When Kevin got about seven feet east of the center line the right front end of the huge Mack double dual truck tractor pulling an empty tank trailer struck the motorcycle in such a manner as to cause both the cycle and young Kevin to apparently be thrown under and run over by the tractor's right drive dual wheels.

Kevin's parents, in this suit against both the truck owner and driver, claimed that the proximate cause of their son's death was the careless handling of the truck in overtaking and attempting to pass the motorbike on the left side of the road after its rider had signaled for a left turn and had moved the cycle to the left in the direction of a private driveway. Plaintiffs asked for burial expenses and $100,000 as their pecuniary loss due to the death of Kevin—an "intelligent, loving, obedient son."

Besides a general denial defendants answered setting out two "defenses": (1) "the accident was an unavoidable casualty occurring through no fault of these defendants," and (2) "the damages which the plaintiffs suffered were caused by the neg-

ligence of the plaintiffs in that they permitted their child of such tender years to be in and about public highways on a mini-bike and failed to care for the safety of their child, and that the negligence of said plaintiffs as hereinabove set out contributed to the proximate cause of the injuries to their child, and by reason of such contributory negligence, these plaintiffs are not entitled to recover."

Upon these pleaded issues the case went to trial. At the close of the evidence the trial court read some 19 instructions. They began typically—with a fairly detailed summary of the pleadings followed by an announcement that it "simply defines the issues to be tried" and that plaintiff has the burden of proving "all of the material allegations of the Petition" and defendants bear the burden of proving the "defenses alleged in the Answer." Then, with stock orthodoxy the court defined "ordinary care," "negligence," "proximate cause" and "contributory negligence." The latter was described in Instruction No. 5 as "a want of such care [on plaintiffs' part] as would have been exercised by reasonably prudent persons under similar circumstances . . . concurring with want of care on part of the defendants" to cause the wreck. And if plaintiffs are found to have been "guilty of contributory negligence, as alleged in the Answer, by permitting Kevin Bennett to ride his motorbike where he was riding it . . . then the plaintiffs cannot recover . . . . "

In Instruction No. 8 the jury was informed of what should have become rather obvious to even a dull person from the first seven instructions—that the "mere proof of an accident or injury carries with it no presumption [and repeated the burden of proof charge given earlier] . . . . Likewise, the mere proof of an accident or injury carries with it no presumption of contributory negligence . . . . "!

■ Taking up plaintiffs' second proposition first we hold neither the pleadings nor proof was sufficient to support a finding that negligence of plaintiffs contributed to their son's death.

To begin with defendants did not plead nor attempt to prove any negligence on the part of the deceased cycle rider—something necessary in order to link the tragedy with plaintiffs' alleged malfeasing permissiveness. They pleaded only that the losses "plaintiffs suffered were caused by the negligence of plaintiffs in that they permitted their child of such tender years to be in and about public highways on a mini-bike and failed to care for the safety of their child" which contributory negligence bars their recovery.

The undisputed evidence was that Kevin had stretched his arm out signaling a left turn and was far enough along in executing the turn as to be seven feet eight inches left of the center line when the right front of the overtaking truck struck the left rear of the two-wheeled vehicle. Other than being underage and without a license to operate the motorcycle on a public road, no violation of any rule of the road is discernable from the record. This evidentiary deficiency will be considered again later in connection with the kindred failure of defendants to prove parental consent.

It was under these circumstances the court gave Instruction No. 5.

Neither party cites any relevant authority on the subject. Plaintiffs refer to cases rejecting the doctrine of imputed negligence between parent and child such as Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369 (1932)—a doctrine defendants did not attempt to apply either by pleading or proof. Defendants on the other hand point to testimony of both plaintiffs to the effect "they knew it was unlawful for their thirteen-year-old son to ride this motorbike on a public roadway. The plaintiff father on the afternoon of the accident rode the mini-bike with his boy [as a pas-

senger] on a public roadway. It was the second time the boy had ridden the mini-bike and the first time he had ridden it at the farm."

Based on these undisputed facts defendants say this: "It is the position of the defendants that when parents purchase a motorbike for their child, knowing that it is unlawful for the child to ride the same on a public roadway, and take him to a farm and turn him loose, unattended, in a locale that is bordered on two sides by blacktop, heavily traveled roadways, this is contributory negligence and they should assume the burden of their own acts in not only creating the circumstances, but permitting their child to not only expose himself, but possibly others, to such tragedy. The trial court had no alternative but to give an instruction on contributory negligence . . . ."

It becomes apparent at once defendants overlooked another bit of significant undisputed evidence, namely, that Kevin's father swore he did not "permit" Kevin to ride any place other than within the private confines of the farm. The father said he had told Kevin several times not to go out onto a public road. This testimony certainly would not justify a finding that plaintiffs "permitted" Kevin "to ride his motorbike where he was riding it." And there was no evidence whatsoever adduced from which the jury could infer that Kevin was of such a nature his father should have anticipated disobedience, or that plaintiffs had in fact consented to Kevin's last ride.

As we said earlier even if there was such evidence it would still have to be shown that Kevin did or failed to do something that "proximately" contributed to the collision, other than to merely be unlawfully on the road for lack of a license—both permissive use and negligent operation of the vehicle by the permittee there must be. Greenland v. Gilliam, 206 Okl. 85, 241 P.2d

384 (1952); Anthony v. Covington, 187 Okl. 27, 100 P.2d 461 (1940).

Reverting to the subject of duty we reach the conclusion we do on the premise that the law imposes no more of an obligation in this kind of a situation on a plaintiff parent than it does on a defending one. In regard to the latter it has been held that absent direct or circumstantial evidence parents who did not knowingly permit their unqualified and unlicensed minor daughter to operate their car upon a public roadway could not be held liable for the injuries sustained by the driver of an automobile which collided with one driven by the minor daughter. Allen v. Hickman, Okl., 383 P.2d 676 (1963). This result was reached after the parents said they authorized their daughter to drive the car only "in the yard," and there existed no direct or circumstantial evidence, no "course of conduct," from which a larger consent could be inferred such as was true in *Greenland.*

The contributory negligence here charged against plaintiffs has frequently been termed "negligent entrustment" of a motor vehicle. Saunders v. Vikers, 116 Ga.App. 733, 158 S.E.2d 324 at 327 (1967). The doctrine—long recognized in this state —connotes the imposition of liability upon one who permits another he knows to be a habitually reckless, unqualified, or otherwise incompetent driver to operate the former's motor vehicle on a public roadway for damages caused by such recklessness or incompetence. Coker v. Moose, 180 Okl. 234, 68 P.2d 504 (1937). This decisional principal underlies a section of our Motor Vehicles Code—47 O.S.1971 § 6–307—providing that the owner of a motor vehicle who "knowingly permits" it to be operated by any person not qualified under the act to do so, "shall be held civilly liable as a joint tort feasor for any unlawful act committed by such" permittee.

■■■ Of course a minor operating a motor vehicle upon a public road is held to

the same standard of care as an adult. Baxter v. Fugett, Okl., 425 P.2d 462 (1967). But mere lack of an operator's license, though a violation of law, is but a condition—not evidence upon which one can ordinarily rely for actionable causation. Bradley v. Chickasha Cotton Oil Co., 184 Okl. 51, 84 P.2d 629 (1938). Failure to comply with statutory motor vehicle registration will not preclude recovery for damage to the machine because of negligence of another. Marland Refining Co. v. Duffy, 94 Okl. 16, 220 P. 846, 35 A.L.R. 52 (1923). Nor will mere failure to possess a required special permit preclude an operator of a motorcycle from recovering for personal injuries caused by another's negligence. Wilson v. Bittner, 129 Or. 122, 276 P. 268, 64 A.L.R. 132 (1929).

These legal precedents make inescapable the conclusion that to sustain a viable defense of contributory negligence defendants will have to prove some circumstances sufficient to permit a finding contrary to the direct evidence of plaintiffs that they not only did not permit Kevin to ride the motorbike on the public road in question but in fact instructed him not to. An example of sufficient circumstances can be found in the earlier cited case of *Greenland* on the one hand. On the other see the previously cited case of Allen v. Hickman for an example of circumstantial evidence insufficient to authorize a finding contrary to a vehicle owner's denial of permission to a minor daughter to drive the car beyond the confines of their yard.

The latter case involves operative facts strikingly similar to those recorded in the instant case on the issue of whether plaintiff breached any duty which the law recognizes as contributing to the proximate cause of the wreck in question. Certain it is if the evidence adduced in *Hickman* is not sufficient to make out a case of actionable primary negligence against the parent-owner of a car wrecked on a public road by a daughter too young to be licensable, then it has to follow the evidence recorded in this case is insufficient to make out a defense of contributory negligence, for the latter comprises the identical elements of the former, namely: duty, breach of duty, proximate cause and injury.

Because there is missing here proof of two essential elements of the defense: (1) breach of duty, and (2) proximate cause, it was fundamental reversible error to instruct on the subject. It is of further interest to note an absence of any evidence that Kevin was an incompetent, reckless or careless driver. Admittedly he was legally unqualified by reason of not being quite old enough to obtain the required operator's permit from the state. But as we mentioned earlier this is merely a condition, an inoperative remote cause, because it lacks sufficient directness, substantiality and relationship to the events immediately culminating in the final act to warrant it being denominated an operative or near or proximate or actionable cause. Causally the mere failure of a participant in an automobile collision to have a valid driver's license is akin to being struck by a falling telephone pole while illegally crossing a street in the middle of the block. Indeed, one can carry the thread of remote causes back to activity of Adam and Eve as being responsible for the tort victim being where he was at precisely the time of the tortfeasance . . . and as a matter of fact aptly apply the "but for" appendage of proximate causation. Hence, we hold the failure of proof on these elements rendered the contributory negligence instructions reversibly erroneous.

■ Another complaint of plaintiffs is that the trial court refused to admit into evidence some photographs of the accident scene taken some 13 months afterwards. Although the highway patrolman who investigated subject collision testified he took

the pictures and the physical appearance of the accident area as depicted in them differed not at all from the appearance of the pastoral scene 13 months earlier, the court sustained an objection premised on the exhibits being "absolutely too remote" and there "may well have been considerable change in vegetation and growth along the sides of the road and possibly fence lines and maybe even the road itself."

The two photographs should have been admitted. The important thing is not when the pictures were taken but whether foundation proof is produced that they correctly depict a relevant person, place, or thing sought to be shown. St. Louis-San Francisco Ry. v. Kilgore, Okl., 366 P.2d 936 (1961); St. Louis & San Francisco R. R. v. Dale, 36 Okl. 114, 128 P. 137 (1912).

Plaintiffs' third proposition complains of Instruction No. 17 because it repeated things said in earlier instructions about contributory negligence then sandwiched in talk about "unavoidable accident." Paraphrased, Instruction No. 17 told the jury that if they found defendants guilty of any act of negligence alleged by plaintiffs which caused Kevin's death and "plaintiffs were not guilty of contributory negligence, then your verdict should be for the plaintiffs," but if they did not find defendants were negligent, or if they found plaintiffs were guilty of contributory negligence, or that the death of Kevin was an "unavoidable accident" as in Instruction No. 14—that is that neither defendants nor anyone else was negligent—then "your verdict should be for the defendants."

■ The evidence in this case does not justify an instruction on the so-called defense of unavoidable casualty. Hayward v. Ginn, Okl., 306 P.2d 320 (1957). The facts in *Hayward* were similar to those here. Two cars out in the country collided. The forward vehicle was attempting a left turn when struck in the rear by the overtaking second one. Said the court:

". . . [T]here was no factor or circumstance in this collision to suggest that the accident occurred in any manner other than by the intentional conduct of the drivers, or that it could not have been prevented by either driver. . . . Unlike negligence, the issue of unavoidable accident depends on an introduction of evidence showing some factor over which the parties had no control, or could not, except by the exercise of exceptional foresight, have predicted. Here it is not contended that there were any latent defects in the vehicles preventing proper control, or that the presence of some unforeseen and unanticipated factor produced the actions of the drivers or their vehicles." This concept of the doctrine squares with that described in the more recent case of Video Independent Theatres, Inc. v. Cooper, Okl., 421 P.2d 833 (1966). "One who pleads an unavoidable accident," said the court, "has the burden of showing that everything was done within human power to avoid the accident. . . . An unavoidable accident is one which could not have been foreseen or prevented." This burden has not so far been borne by defendants.

■ Finally plaintiffs say in view of Kevin being only 13 years old the court should have given their requested instruction informing the jury that where "a child is known to be in the vicinity, a degree of vigilance commensurate with the greater hazards created by his presence is required of a person . . . . A child of tender age by nature demands and the law imposes upon a motorist the duty to exercise in behalf of such child that degree of extreme caution which such motorist exercises for his self-preservation . . . ."

An evidentiary basis for such an instruction we cannot find. Whether the truck driver knew as he drew nigh the helmeted cyclist that he was a minor child of 13 is not disclosed. Nor is there any fact

recorded that would justify a finding he should have known. We can take judicial notice that 13-year-old boys commonly achieve sizes equal to and larger than many adults. This fact along with the rule we mentioned earlier—the one imposing an adult standard of care upon Kevin under the circumstances—convinces us the requested. instruction describes inapplicable law and does so in a rather undesirable argumentative way, so that refusal to give it was not error.

Because of the instructional errors discussed earlier, however, the cause is reversed and remanded with instructions to grant plaintiffs a new trial.

BACON and NEPTUNE, JJ., concur.