The Reverend Richmond F. THWEATT, III, Father and Next Friend of Richmond F. Thweatt, IV, a Minor Child, Plaintiff-Appellant,

v.

Dr. Joseph A. ONTKO, an Individual, Defendant-Appellee.

No. 85–1357.

United States Court of Appeals, Tenth Circuit.

March 25, 1987.

A.T. Elder, Jr., of Stewart & Elder, Oklahoma City, Okl., on the brief, for defendant-appellee.

Before McKAY, SEYMOUR and TACHA, Circuit Judges.

McKAY, Circuit Judge.

This appeal comes from a jury verdict for defendant Dr. Joseph A. Ontko and against plaintiff Rev. Richmond F. Thweatt, III. Rev. Thweatt brought this negligence action to recover for shooting injuries suffered by his 13-year-old son, Richmond, when Richmond, with his uncle and cousin, engaged in a "night patrol" on and around Dr. Ontko's property. Rev. Thweatt now appeals, submitting four trial court actions for review.

I.

Rev. Thweatt claims that the district court erred when it refused his motion for a directed verdict. Essentially, Rev. Thweatt argues that Dr. Ontko's violation of Oklahoma City, Okla. Code § 21–48[1] is negligence per se, and, therefore, the trial court should have granted Rev. Thweatt's motion for a directed verdict. Dr. Ontko admits that he fired his shotgun while standing next to his own residence and within 600 feet of his neighbor's house, but alleges that he should not be liable for any resulting injuries because he acted in self-defense and defense of others.

As a municipality, Oklahoma City has legitimate authority to pass ordinances promoting the public health, safety, or general welfare of that community. *Spartan's Indus., Inc. v. Oklahoma City*, 498 P.2d 399, 401 (Okla.1972); *King v. City of Tulsa*, 415 P.2d 606, 611 (Okla.Crim.App.1966). Under certain conditions, violation of those ordinances may be considered negligence per se. *Boyles v. Oklahoma Natural Gas Co.*, 619 P.2d 613, 618 (Okla.1980). However, under Oklahoma law, violation of a

Charles J. Watts of Looney, Nichols, Johnson & Hayes, Oklahoma City, Okl., and J.W. Coyle, III, of Hughes & Nelson, Oklahoma City, Okl., on the briefs, for plaintiff-appellant.

---

1. Okla.City Code § 21–48, in relevant part, states:

    *Discharging firearms; exceptions.* No person shall discharge any species of firearms, air guns or weapons except as hereinafter provided: a. Shotguns. The discharge of shot-

    guns if done from a point at least 600 feet (600') from any residence ... in which persons reside ... provided no shells containing projectiles larger than No. 2 shot may be used....

statute or ordinance does not create automatic liability. *Pepsi-Cola Bottling Co. v. Von Brady,* 386 P.2d 993, 997 (Okla.1963); *Elam v. Loyd,* 201 Okla. 222, 223, 204 P.2d 280, 282 (1949). Furthermore,

> "[u]nder our national and state organizations a municipal city government is only possible as an administrative agency of the state having that measure of local self-government granted by the supreme sovereign power, and all local laws of such municipality must be consistent with our fundamental principle of government, and always subject to the control of the state."

*City of Tulsa v. Taylor,* 555 P.2d 885, 888 (Okla.Ct.App.1976) (quoting *City of Sapulpa v. Land,* 101 Okla. 22, 28, 223 P. 640, 645 (1924)). Benefits granted by state statutes are statewide in their effect and cannot be taken away by the actions of a municipality. *Id.*

██ Under Okla.Stat. tit. 76, § 9 (1976),[2] a party may use necessary force to protect himself, any relative or guest. Furthermore, a party found to be using necessary force will not be liable for the resulting injuries. *Foster v. Emery,* 495 P.2d 390, 391 (Okla.1972) (defendant not liable for night shooting death of a 15–year-old male trespasser in a residential area of Oklahoma City). Therefore, while neither party disputes that Dr. Ontko violated the Oklahoma City ordinance when he fired his shotgun, Dr. Ontko has a valid right to claim self-defense and defense of others. Specifically, Dr. Ontko claims that he fired in warning, after several male voices were heard, yelling and taunting in a threatening manner, from the densely wooded darkness surrounding his home. Richmond sustained injuries, the most significant of which were a single pellet shot lodged in his neck and another pellet shot lodged in his hand. Record, vol. 5, at 100, 134. While many matters surrounding the incident are disputed, "resolution of ... conflicts, and the question of the credibility of witnesses, are of course matters peculiarly for jury determination." *Foster,* 495 P.2d

at 391. Thus, Dr. Ontko was entitled to have the jury determine whether his claimed acts of self-defense and defense of others were necessary despite the violation of the Oklahoma City ordinance, and a directed verdict was properly refused.

## II.

Rev. Thweatt claims that, even if Dr. Ontko may raise the issue of self-defense, the trial court's instructions on that matter were erroneous. When instructing on self-defense, the trial court took language directly from Okla.Stat. tit. 21, § 643 (1983), and stated:

> [I]t is not unlawful to use force against another in self-defense or in defense of property:
>
> > When committed either by the party about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person, or any trespass or other unlawful ˙ interference with real or personal property in his lawful possession; provided the force or violence used is *not more than sufficient* to prevent such offense.

Record, vol. 1, at 74 (emphasis added). The court also told the jury: "[Y]ou are instructed that failure to perform one's duty to exercise ordinary care means failure to exercise that degree of care and caution that a reasonably prudent person would exercise under all the circumstances." *Id.*

Rev. Thweatt objected to the jury instructions, claiming that they should have gone further. Specifically, Rev. Thweatt contends that the jury should have been instructed that, before a defendant can resort to deadly force, he or she must be confronted with such force. Rev. Thweatt suggests that failure to provide this instruction deprives him of an opportunity to present a decisive issue framed by the pleadings and the evidence.

Oklahoma courts have held that jury instructions are not objectionable if, when

---

**2.** Okla.Stat. tit. 76, § 9 (1976), states when the right to use force is justified:

> Any necessary force may be used to protect from wrongful injury, the person or property

of one's self, or of a wife, husband, child, parent or other relative, or member of one's family, or of a ward, servant, master or guest.

considered as a whole, they adequately state the law. *Greenland v. Gilliam*, 206 Okla. 85, 88, 241 P.2d 384, 388 (1952). Furthermore, even though each party is entitled to his theory of the case, neither is necessarily entitled to jury instructions which create a special emphasis upon an aspect of the evidence already encompassed by existing instructions. *Dippel v. Hargrave*, 206 Okla. 26, 27, 240 P.2d 1070, 1072 (Okla.1952). The issue in this case is whether the instructions given by the court adequately state the law of Oklahoma on the use of a firearm in defense of self, property or others.

Admittedly, use of a firearm is not justified by a mere technical trespass upon the property of another. *See Powell v. State*, 53 Okla.Crim. 366, 12 P.2d 247 (1932) (two boys shot after leaving defendant's farm gate open); Annotation, *Civil Liability for Use of Firearm in Defense of Habitation or Property*, 100 A.L.R.2d 1021, 1025 (1965); *cf. Townley v. State*, 355 P.2d 420 (Okla.Crim.App.1960) (victim shot while allegedly attempting to pull defendant from his car). However, "a property owner may shoot with impunity where the incursion upon his property is also attended by a threat of personal harm to himself, his family, or others he is entitled to defend." Annotation, 100 A.L.R.2d at 1024 (footnote omitted); *see also* Okla.Stat. tit. 76, § 9 (1976). Furthermore, Oklahoma law uses a standard based not upon whether a party was confronted with force, but upon whether the force was "more than sufficient to prevent" an offense. Okla.Stat. tit. 21, § 643(3). This standard is considerably lower than that proposed by Rev. Thweatt.

In deciding whether the use of force is appropriate, " 'the precise interest invaded by the intruder and defended with the firearm' " has significant importance. *Foster*, 495 P.2d at 394 (quoting Annotation, 100 A.L.R.2d at 1025). The *Foster* court found that "the evidence justifies a jury conclusion that the defendant ... reasonably fear[ed] more than a 'simple trespass on land.' " 495 P.2d at 394. Similarly, the jury here received evidence to show that Dr. Ontko believed the threat consisted of more than a trespass to property and that he fired his shots in warning in self-defense

and in defense of others. Okla.Stat. tit. 21, § 643, is applicable to all degrees of such force. The instructions given directed the attention of the jury to a determination of whether Dr. Ontko used only force sufficient to prevent an offense against him or his guests. Additional instructions on deadly force are not mandated, and their omission does not constitute deprivation of the right to present a decisive issue in the case.

### III.

Rev. Thweatt also challenges the court's decision to exclude testimony of four rebuttal witnesses. After a misunderstanding occurred over the court's time schedule, Rev. Thweatt made a timely offer of proof showing the proffered testimony of the witnesses. The first witness Rev. Thweatt wanted to call was an expert in firearms who would have testified that, given the shot pattern, Dr. Ontko could not have fired into the air. Additionally, Rev. Thweatt wanted to call a party guest who would testify that he was not in fear of his own life and who would describe what he observed among the other guests. Finally, Rev. Thweatt wished to call two police officers who would have denied that they asked whether "it could have been the Edwards and the Vietnamese" after arriving at the Ontko's house the night of this incident. Record, vol. 6, at 157. The police officers' testimony would have been offered to challenge the veracity of Mrs. Ontko and to indicate that the Ontkos knew or had reason to believe it was their neighbors out in the woods.

This evidence was clearly rebuttal evidence, but the trial court excluded the testimony upon other grounds; that is, the witnesses were not available in time to permit the case to go forward according to the preset court schedule. On the first day of trial, the court made an announcement regarding the next day's schedule:

THE COURT: Let me make a very short announcement so you folks can plan in advance, as well as us. The funeral that I must go to tomorrow is at 2:00. It's

only a few blocks up the street, so I'll not be gone long.

What we plan to do then, we'll start working in the morning at 9:00, and work until about 11:00, or 11:15, and take a 15-minute break, and then come back and work until about way around 1:30. And then, take an hour or hour and a half so as to allow us to go there for the 2:00 services.

Record, vol. 5, at 97-98.

Rev. Thweatt's counsel misunderstood the scheduling arrangements, record, vol. 6, at 157, and did not have his expert firearms witness ready to testify. Record, vol. 6, at 152. When the court asked, "Now, do you have anything besides that expert?", Rev. Thweatt's counsel responded: "If it please the Court, no. This is the only one we have got...." Record, vol. 6, at 153. A few moments later, as an afterthought, Rev. Thweatt's counsel asked the court's permission to introduce the additional three witnesses, stating "Your honor, I'm sorry. I'm asleep at the switch." Record, vol. 6, at 155. Although counsel indicated the witnesses were on "standby," they were not available at that moment and, since it was then 1:00 p.m., only one-half hour remained to complete the case. *Id.* at 157.

■ A trial court necessarily possesses considerable discretion in determining the conduct of a trial, including the orderly presentation of evidence. *Alires v. Amoco Prod. Co.,* 774 F.2d 409, 413 (10th Cir. 1985). Even evidence which is relevant may be excluded in order to promote the administration of the judicial process, *Chapman v. United States,* 169 F.2d 641, 642-43 (10th Cir.), *cert. denied,* 335 U.S. 860, 69 S.Ct. 134, 93 L.Ed. 406 (1948), and the direction of the trial court will not be disturbed absent a manifest injustice to the parties. *CCMS Publishing Co. v. Dooley-Maloof, Inc.,* 645 F.2d 33, 37 (10th Cir. 1981); *cf. Robinson v. Audi NSU Auto Union Aktiengesellschaft,* 739 F.2d 1481, 1483-84 (10th Cir.1984). Even though relevant, the testimony excluded here was not crucial to Rev. Thweatt's case. We conclude, therefore, that the trial court's decision to carry out its preset court schedule did not constitute an abuse of discretion.

## IV.

Rev. Thweatt claims that certain testimony by Mrs. Ontko was improperly admitted over his objections. Before trial began, Rev. Thweatt filed a motion in limine to exclude evidence relating to Mrs. Ontko's cancer and testimony establishing any previous burglaries, break-ins, or vandalism occurring in or about the neighborhood where Dr. Ontko resides. This motion was denied by the court because it was not filed in a timely manner.

At trial, Mrs. Ontko was asked about her state of health as she began her testimony, whereupon Rev. Thweatt's counsel entered a general objection. Record, vol. 6, at 13-14. Later, Mrs. Ontko was queried as to previous occasions when it was necessary to call the police, whereupon Rev. Thweatt's counsel objected to the question "as immaterial." *Id.* at 21-22. The trial court overruled both objections.

Rev. Thweatt now asserts that both pieces of testimony were irrelevant and prejudicial and, therefore, should have been excluded by the trial court. Additionally, we chose to examine the basis for the trial court's ruling for the first time upon appeal.

■ In overruling the objections of Rev. Thweatt's counsel, the trial court relied solely upon its earlier denial of the untimely Motion in Limine. Record, vol. 6, at 13. As the Oklahoma courts have stated:

A ruling on the threshold of trial does not preclude the court changing its ruling based on other developments during trial. Nor does such a ruling relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial.

*Zehner v. Post Oak Oil Co.,* 640 P.2d 991, 995 (Okla.Ct.App. 1981). Thus, the trial court's denial of Rev. Thweatt's Motion in Limine did not preclude him from the right or responsibility to object to the same or similar evidence at trial. The trial court should have exercised its discretion to determine whether Mrs. Ontko's testimony was material. Its reliance upon the earlier

Motion in Limine and its failure to exercise discretion was erroneous.

However, the error does not affect the outcome in this case for several reasons. Because Rev. Thweatt did not properly raise the issue at trial, the trial court did not have an opportunity to correct its error. Additionally, "[a] general verdict may be upheld if it appears that the errors committed were not 'vital' or prejudicial to the 'substantial rights' of the objecting party." *Asbill v. Housing Auth. of the Choctaw Nation*, 726 F.2d 1499, 1504 (10th Cir.1984) (citing *Wilmington Star Mining Co. v. Fulton*, 205 U.S. 60, 79, 27 S.Ct. 412, 419, 51 L.Ed. 708 (1906)); *Herndon v. Seven Bar Flying Serv., Inc.*, 716 F.2d 1322, 1326 (10th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984); *see also* Fed.R.Evid. 103 (no error unless "substantial right of party is affected"); Fed.R. Civ.P. 61 ("The court at every stage of the proceedings must disregard any error or defect ... which does not affect the substantial rights of the parties."). Thus, the trial court's error requires reversal only if it is prejudicial to the substantial rights of Rev. Thweatt.

First, Mrs. Ontko was allowed to respond to a question regarding her poor health and nervousness at the time of trial. Record, vol. 6, at 12–13. As Rev. Thweatt now asserts, this testimony had marginal probative value, and its primary impact was probably to elicit sympathy from the jury. However, this information did relate to Mrs. Ontko's general background and basic qualifications as a witness. In *Prudential Insurance Co. of America v. Faulkner*, 68 F.2d 676 (10th Cir.1934), admission of testimony on nervous instability did not constitute error when only a general objection was made at trial and prejudice was raised for the first time on appeal, even though the testimony may have elicited sympathy from the jury. *Id.* at 676–78.

Similarly, although testimony regarding Mrs. Ontko's health was not an important factor in this case, it was probative in assisting the jury to evaluate her testimony. Complaints of irrelevance and prejudice raised for the first time on appeal do not support a finding of reversible error. The trial court's decision to admit this testimony does not rise to the level of a vital error which affects the substantial rights of Rev. Thweatt.

Second, Mrs. Ontko was also allowed to testify that, during the five years she and her husband had lived in their home, they had experienced some attempted break-ins and many times had heard "someone coming over the fence on our back," leading them to become more cautious and to call the police when different noises were heard. Record, vol. 6, at 22–23. Rev. Thweatt objected on the basis of immateriality.[3] *Id.* at 22. In *Foster*, the defendant's family had been upset and frightened by prior incidents of prowling and window peeping. The *Foster* court said:

> Defendant's "mental state" was a matter of controlling importance and the question of the reasonableness of his resort to firearms, under *all* of the circumstances shown to exist, was properly before the jury in this case.

495 P.2d at 394 (emphasis added). Therefore, although Mrs. Ontko's testimony was somewhat remote, we conclude the circumstances which she described were probative as to Dr. Ontko's state of mind at the time of the shooting.

Furthermore, since the admission of this evidence was not actually prejudicial, the error committed does not create a right to reversal. *See Harris v. Quinones*, 507 F.2d 533, 539 (10th Cir.1974). During cross-examination of Dr. Ontko, Rev. Thweatt's counsel asked the following question: "Have you been getting any

---

**3.** Upon appeal, Rev. Thweatt cites *Smith v. State*, 484 P.2d 1313 (Okla.Crim.App. 1971), for the proposition that evidence of prior encounters would not mitigate the shooting unless Dr. Ontko could show that Richmond or his uncle and cousin had "committed some overt act toward him, which evidenced his present intention to carry forward those threats into immediate execution." *Id.* at 1314. However,

*Smith* concerned a party who retreated from a dispute in a public cafe and then returned to use deadly force upon the other party; the court made this statement in relation to the jury's decision regarding which party was the aggressor. *Id.* Since a similar theory was not advanced in the present case, it is not discussed here.

threats of violence toward you in the neighborhood, Dr. Ontko?" Record, vol. 6, at 76. Dr. Ontko then responded as to previous attempted break-ins, a call to the police, and to unusual behavior on their property. *Id.* at 77. The objectionable statement by Mrs. Ontko was certainly not more prejudicial than testimony as to past events elicited from Dr. Ontko by Rev. Thweatt's counsel himself. *See Herndon,* 716 F.2d at 1331 (improper admission of service bulletins was harmless error because other directives were admitted containing the same information). Thus, any error in admitting Mrs. Ontko's statement was made harmless when Rev. Thweatt's counsel obtained similar testimony during cross-examination of Dr. Ontko, and the trial court's error did not prejudice the substantial rights of Rev. Thweatt.

In summary, the trial court should have exercised its discretion in properly considering the objections to Mrs. Ontko's testimony. Had it done so, we would not have considered it an abuse of discretion for this testimony to have been admitted. Therefore, although the trial court erred in not exercising this discretion, we find this error to be harmless.

The judgment of the trial court is AFFIRMED.