**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLIAM DONAHUE,

    Plaintiff - Appellant/Cross-
Appellee,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant - Appellee/Cross-
Appellant.

Nos. 22-3132 & 22-3142
(D.C. No. 2:19-CV-02725-TC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

William Donahue sued United Parcel Service ("UPS"), alleging employment

discrimination and retaliation claims. At trial, the jury returned a verdict for UPS.

Mr. Donahue has waived the issues he raises on appeal. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.[1]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We dismiss UPS's conditional cross-appeal (No. 22-3142) as moot.

## I.  BACKGROUND

### A.  *Factual History*

Mr. Donahue suffered a heat-related injury while working as a probationary employee for UPS.  He was hospitalized overnight for extreme heat exhaustion, acute kidney failure, and a cracked kneecap.

UPS paid Mr. Donahue workers' compensation for three months until he was cleared to restart work.  When Mr. Donahue met with UPS personnel on Friday, October 12, 2018, they told him he could resume or restart his training and probationary employment period.[2]  He declined.

A UPS supervisor then disqualified him from resuming his pre-injury probationary employment but said he could reapply and restart training.  UPS terminated his employment on Monday, October 15, 2018.

### B.  *Procedural History*

Mr. Donahue sued UPS in Kansas federal district court, alleging (1) failure to accommodate, (2) discrimination, and (3) retaliation in violation of the Americans with Disabilities Act ("ADA"); (4) retaliatory discharge under the Kansas Worker's Compensation Act ("KWCA"); and (5) race discrimination and retaliation in violation of 42 U.S.C § 1981.

---

[2] To complete their training, new drivers must "scratch"—deliver the packages on their assigned route within an allotted time for five consecutive days.  App., Vol. IX at 2341.  Mr. Donahue had completed the classroom training, but he had not yet run scratch.  If he had resumed his training, he would have had 14 days remaining to qualify as a full time employee.

UPS moved for summary judgment. The court granted the motion on the § 1981 claim but denied it on the others. At trial, the jury returned a verdict for UPS on the remaining claims.

Mr. Donahue moved for a new trial under Federal Rule of Civil Procedure 59. The district court denied his motion. This appeal followed.

## II. DISCUSSION

### A. *Waiver*

As explained below, Mr. Donahue has waived his appellate arguments either because he failed to preserve them in district court and argue plain error on appeal or because he has inadequately argued them on appeal.

An appellant who has forfeited an argument in district court must argue plain error on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). "To show plain error, a party must establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* Failure to show plain error on appeal "marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131. The argument is considered waived. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (noting that "even if [a party's] arguments were merely forfeited before the *district court*, [the] failure to explain . . . how they survive the plain error standard waives the arguments in *this* court").

In addition, "[a]rguments not clearly made in a party's opening brief are deemed waived." *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *accord United States v.*

*Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (alterations and quotations omitted)); *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

## B.  *Appeal Issues*

Mr. Donahue argues the district court (1) erred by failing to order a new trial based on UPS's discovery violations, (2) violated his due process rights by limiting his time to present evidence at trial, and (3) committed procedural and substantive errors on the jury instructions.

## 1.  Discovery Violations

### a.  *Additional procedural history*

One year after the discovery deadline and one month before trial, UPS produced additional documents to Mr. Donahue.[3]  He alerted the district court to this late production at a pretrial conference.  He argued that "[i]t seem[ed] highly inappropriate, and in fact, sanctionable that [UPS] ever denied having these documents, testimony, and so on."  App., Vol. VII at 1665.

The district court asked Mr. Donahue what it "should do" and whether he "want[ed] to proceed with trial."  *Id.* at 1672.  Mr. Donahue said he "c[ould] proceed with the trial if the court order[ed] . . . appropriate discovery sanction[s]" prohibiting

---

[3] UPS does not dispute that this production was made a year after discovery closed.

4

UPS from using the documents and from "calling . . . witnesses . . . identified through the[] documents," *id.* at 1673-74, and permitting him to use and "redact" the documents, *id.* at 1679.[4]  UPS responded that it should not be "preclude[d]" from "cross-examining someone who's using [a belatedly produced] document." *Id.* at 1675.

The court "sanction[ed]" UPS by not allowing it "to affirmatively use [the documents]," but it permitted UPS to ask questions about documents that Mr. Donahue used.  *Id.* at 1680.  The court refused to allow redaction.  Mr. Donahue argued it was unfair that he could not redact the documents, but he did not ask for additional sanctions or to continue the trial.

On the morning trial began, Mr. Donahue raised an additional discovery issue about a document that had been produced with missing pages.  The district court asked if he wanted to postpone the trial, and Mr. Donahue declined.  As the trial progressed, the court reiterated that UPS could not introduce any late-produced documents but could ask questions about documents that Mr. Donahue introduced.

Another discovery issue surfaced during trial.  Throughout discovery, Mr. Donahue had requested UPS to produce a grievance form completed by UPS employee Larry Burger.  Mr. Burger, the elected union steward, had filed a grievance

---

[4] Mr. Donahue asked to redact the documents so he could introduce them without introducing evidence favorable to UPS.  For example, he wanted to introduce an email about the date he was terminated and redact an explanation of why was terminated.

about Mr. Donahue's injury.  UPS said it was unable to locate the document.

Mr. Donahue called Mr. Burger as a trial witness.  During Mr. Donahue's direct

examination, Mr. Burger said he brought a copy of the grievance form with him.

Mr. Donahue did not request a sanction against UPS, a continuance, or other relief.

Instead, he introduced the grievance form into evidence over UPS's objection and

questioned Mr. Burger about it.

After the jury verdict, Mr. Donahue moved for a new trial.  His motion was

"limit[ed] . . . to the final jury instructions" and did not raise an argument about the

discovery issues.  App., Vol. XIV at 3657-68.

b.  *Analysis*

Mr. Donahue waived his arguments about the discovery issues because they

were not preserved or were inadequately briefed.

First, Mr. Donahue argues the district court should have ordered a new trial to

sanction UPS for late document production and failure to produce the grievance

form.  Aplt. Br. at 12-15.  Because he never raised this argument before, during, or

after trial and has not argued plain error on appeal, he has waived it.

Mr. Donahue never asked the district court for a new trial based on UPS's

discovery violations.  After receiving the late-produced documents, Mr. Donahue

requested the court to (1) prohibit UPS from using them, (2) prohibit UPS from

calling witnesses newly identified in them, and (3) allow him to redact them.  Except

for redaction, the court imposed these sanctions, and Mr. Donahue objected only to

the redaction denial.  The court twice offered to continue the trial, and Mr. Donahue

6

declined.  Mr. Donahue also never requested a mistrial or any other relief for UPS's failure to produce the Burger grievance form.  He instead introduced the grievance form into evidence.  Even in his post-trial Rule 59 motion for a new trial, Mr. Donahue did not ask for a new trial based on the discovery issues.

Mr. Donahue therefore forfeited any argument that the district court should have granted him a new trial based on discovery violations.  He fails to argue plain error on appeal, *see* Aplt. Br. at 6-19; Aplt. Reply Br. at 1-10, so he has waived this issue, *see United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

Second, Mr. Donahue broadly challenges the court's handling of discovery issues before and during trial.  Aplt. Br. at 6-18. He cites trial transcript excerpts showing the district court's impatience with his continued discussion of UPS's late discovery production, *see* Aplt. Br. at 15-16; Aplt. Reply Br. at 2-4, but he does not identify any new rulings.  His argument was not preserved or is inadequately briefed.

Third, Mr. Donahue complains UPS's late document production showed that several witnesses did not testify truthfully or lacked knowledge to support their deposition or trial testimony.  Aplt. Br. at 7-12, 17-19.  But he does not contend the district court prevented him from using the documents to impeach those witnesses at trial or that it otherwise erred.  Nor does he cite any portion of the transcript where he sought a ruling from the court on these alleged discrepancies.  *See Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012) ("An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling." (quotations omitted)).  Mr. Donahue also asserts that the withheld discovery

7

undermined UPS's summary judgment motion. Aplt. Br. at 18. But Mr. Donahue never asked the court to reconsider its summary judgment ruling, and he fails to develop an argument on appeal about what the district court should have done differently. He thus failed to preserve these arguments or adequately develop them on appeal, and they otherwise lack merit.

Fourth, Mr. Donahue asserts that the trial court's handling of discovery issues violated his due process rights. Aplt. Br. at 7; Aplt. Reply Br. at 2-3, 10. He fails to develop this argument or support it with legal authority, and apart from general claims of unfairness, he never made this argument below.

*　　*　　*　　*

Mr. Donahue has waived his discovery arguments.

2. **Time Limits**

Mr. Donahue argues the district court violated his due process rights by imposing time limits on the last day of trial. Aplt. Br. at 20-25. He has waived this argument.

a. *Additional procedural history*

At a pretrial conference, the district court scheduled Mr. Donahue's trial for four days and allotted each side 20 minutes for opening statements and 20 minutes for closing arguments, for a total of "about 17 and a half trial hours." App., Vol. VII at 1648. It told the parties to decide how the time should be divided but also said it intended to "give [the parties] roughly equal time." *Id.* at 1648-49.

8

Throughout trial, the district court expressed concern about the trial's pace and progress. At the end of the third day, it noted there were only five and a half hours left for testimony, so the trial was now "in a time crunch." App., Vol. XI at 2692. Unless the parties could resolve the timing issues themselves, it was "inclin[ed] . . . to set some time limits." *Id.* at 2692-93.

UPS said Mr. Donahue had used about 600 minutes and it had used about 200 minutes. The district court said UPS's numbers "[a]necdotally . . . comport[ed] with [its] . . . view of how this matter ha[d] progressed." *Id.* at 2698. It then decided to "give plaintiffs an hour-and-a-half of time[] [and] defendants four hours of time." *Id.* at 2699.

Both parties objected. Mr. Donahue's counsel stated, "[J]ust for the record I'm just going to say we object to time limits and then sit down." *Id.* He later argued the limit was "unduly restrictive" and that he was "entitled to more . . . time." *Id.* at 2702. He proposed an alternative solution that the court rejected. *Id.* at 2700. He never made a due process objection.

b. *Additional legal background*

"A trial court necessarily possesses considerable discretion in determining the conduct of a trial, including the orderly presentation of evidence." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir. 1987); *see also* Fed. R. Evid. 611(a)(2) ("[The] court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: . . . avoid wasting time."). A "trial court's decision

to carry out its preset court schedule" therefore may "not constitute an abuse of discretion" even when relevant evidence is excluded. *Thweatt*, 814 F.2d at 1470.

A few courts have suggested that a trial court's time limits could violate a party's due process rights. *See, e.g.*, *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507-08 (9th Cir. 1995); *Maloney v. Brassfield*, 251 P.3d 1097, 1101-02 (Colo. App. 2010); *In re Marriage of Ihle*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998). The Tenth Circuit has not yet addressed this issue.

    c. *Analysis*

Although Mr. Donahue objected to the time limits, he did not object on due process grounds. *See* App., Vol. XI at 2699; *see also* Aplt. Reply Br. at 10-11 (summarizing Mr. Donahue's objections, none of which were based on due process). His general objections did not preserve a constitutional challenge. An objection on non-constitutional grounds "fails to preserve" a constitutional challenge. *See United States v. Coulter*, 57 F.4th 1168, 1182 (10th Cir. 2023) (quotations omitted). He therefore forfeited his due process argument by failing to raise it before the district court and waived it by failing to argue plain error on appeal. *See Leffler*, 942 F.3d at 1196.

3. **Jury Instructions**

Mr. Donahue argues the district court erred because (1) it used a jury instruction procedure that unduly limited his opportunity to object, (2) the instructions did not define key terms, and (3) the instructions should not have referenced UPS's reasons for firing Mr. Donahue.

a. *Additional procedural history*

To prevail on his

- ADA discrimination claim, Mr. Donahue needed to show "he has suffered an adverse employment action because of [his] disability." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (quotations omitted).

- ADA retaliation claim, Mr. Donahue had to show that UPS took an adverse employment action against him because he engaged in protected activity. *Proctor v. UPS*, 502 F.3d 1200, 1208 (10th Cir. 2007).

- KWCA retaliation claim, Mr. Donahue needed to show that UPS terminated his employment because he filed a claim for workers compensation benefits. *Id.* at 1212.

The parties agree the adverse employment action was UPS's discharge of Mr. Donahue.

For these claims,[5] UPS would not be liable if it discharged Mr. Donahue for a non-pretextual, legitimate, non-discriminatory, and non-retaliatory reason. *See Dewitt*, 845 F.3d at 1308 (ADA discrimination); *Proctor*, 502 F.3d at 1208 (ADA retaliation); *id.* at 1212 (KWCA retaliation).[6]

---

[5] Mr. Donahue also alleged an ADA reasonable accommodation claim. His challenge on appeal to specific jury instructions does not relate to that claim.

[6] UPS's legitimate reason for termination was part of a burden-shifting framework the parties and the district court applied to the retaliation and discrimination claims under *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 800-04 (1973). *See* App., Vol. VI at 1489, 1491; *Dewitt*, 845 F.3d at 1306-07 (ADA discrimination); *Proctor*, 502 F.3d at 1207-08 (ADA retaliation); *id.* at 1211 (KWCA retaliation).

i.  Jury instruction procedure

The parties submitted proposed jury instructions before the trial began.  The court provided its proposed jury instructions the day before trial began and required the parties submit written objections by the second day of trial.  Both parties did.  The court held an initial instructions conference the next day, where Mr. Donahue raised new objections.  The court addressed both the written and oral objections; it resolved some objections but reserved ruling on others until all of the evidence had been presented.  After the parties rested, the court provided its revised proposed jury instructions and held a final jury instruction conference where the parties could make any new objections.  The parties reasserted their prior objections and Mr. Donahue raised two new objections based on evidence presented during trial.  The district court overruled all objections, and the revised proposed jury instructions became the final jury instructions.

ii.  Particular instructions

Mr. Donahue's arguments on appeal concern the following instructions.

1)  Adverse employment action

The jury instructions did not include the phrase "adverse action."  *See* App., Vol. XIV at 3600-48.  Instead, they referred to UPS's "termination" of Mr. Donahue's employment.  *See id.*; App., Vol. XI at 2730-31.

Mr. Donahue initially used "termination" to describe the adverse action, including in his proposed instructions.  *See, e.g.*, App., Vol. VII at 1767-69, 1787.  He later orally objected to the use of "termination," explaining that the parties

disputed what it meant.  He asked the court to "use a synonym of terminate such as 'discharge' or 'separate from employment.'"  App., Vol. XI at 2731.[7]  He never objected at trial that the court failed to use the phrase "adverse action" or to define it.

### 2)  Protected activity

Both parties initially proposed a jury instruction on protected activity stating that "[a] request for a reasonable accommodation is conduct protected by the ADA."  App., Vol. VII at 1786.  The court adopted this definition in its proposed instructions. *Id.* at 1847.  UPS later requested a more specific definition.  App., Vol. IX at 2139. In response, Mr. Donahue said he "th[ought] that 'protected activity' [wa]s defined in the [jury] instruction[s]" even though the definition was "not labeled as protected activity."  App., Vol. XI at 2726-27; *see also id.* at 2727 ("[W]e talk about protected activity . . . its defined in here, but it doesn't tell the jury that's what we're talking about.").  He seemed to join UPS's request, "agree[ing]" the jurors might be confused about the definition because it "just sounds like legalese."  *Id.* at 2726.

The court kept the original definition of protected activity in the final jury instructions, which stated that Mr. Donahue needed to show he "engaged in protected activity" and that "[a] request for a reasonable accommodation is conduct protected by the ADA."  App., Vol. XIV at 3616.

---

[7] Although the court requested written objections, Mr. Donahue did not object in writing to the use of "termination."  *See* App., Vol. IX at 2125-37.

3)  Legitimate reason for termination

The district court's final jury instructions explained UPS's position that "it terminated [Mr.] Donahue's employment for legitimate, non-discriminatory, and non-retaliatory reasons."  *Id.* at 3604; *see also id.* at 3610, 3616.  Mr. Donahue did not object to this language, but he did object to UPS's related proposed instruction about "business judgment," which stated that the jury "may not return a verdict for [Mr. Donahue] just because [it] might disagree with [UPS]'s decisions or action . . . or believe them to be harsh, unreasonable, unfair or even a violation of [UPS]'s own policies and procedure" and that it "should not consider whether the reasons offered by [UPS] or the discipline imposed upon [Mr. Donahue] were wise, fair, correct or too harsh."  App., Vol. VII at 1770.  He said the "business judgment" instruction "misstate[d] the law by not including additional instruction."  App., Vol. IX at 2134.

### iii.  Motion for a new trial

As previously noted, Mr. Donahue filed a Rule 59 post-trial motion for a new trial.  He objected to the court's jury instruction procedure and to the instructions regarding adverse employment action, protected activity, and legitimate reason for termination.

The district court denied the motion, holding that Mr. Donahue had waived these issues by not raising them at trial and not showing plain error.  It rejected Mr. Donahue's argument about the business judgment instruction because UPS had consistently maintained it had legitimate reasons for firing Mr. Donahue and the instruction comported with prevailing law.

14

b.  *Legal background*

Federal Rule of Civil Procedure 51 addresses instructions to the jury,

objections, and preserving a claim of error.  It states:

> (a) Requests.
>
> > (1) *Before or at the Close of the Evidence.*  At the close of the evidence or at any earlier reasonable time that the court orders, a party may file and furnish to every other party written requests for the jury instructions it wants the court to give.
> >
> > (2) *After the Close of the Evidence.*  After the close of the evidence, a party may:
> > > (A) file requests for instructions on issues that could not reasonably have been anticipated by an earlier time that the court set for requests; and
> > >
> > > (B) with the court's permission, file untimely requests for instructions on any issue.
>
> (b) Instructions.  The court:
>
> > (1) must inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments; [and]
> >
> > (2) must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered . . . .
>
> (c) Objections.
>
> > (1) *How to Make.*  A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection.
> >
> > (2) *When to Make.*  An objection is timely if:

> (A) a party objects at the opportunity provided under Rule 51(b)(2); or
>
> (B) a party was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused.
>
> (d) Assigning Error; Plain Error.
>
> > (1) *Assigning Error.*  A party may assign as error:
> > (A) an error in an instruction actually given, if that party properly objected; or
> >
> > (B) a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected.
> >
> > (2) *Plain Error.*  A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.

"[T]o preserve errors for appeal, an attorney must make timely objections to jury instructions with which he disagrees, the refusal to give his proposed instructions, and improper procedures used by the court." *Giron v. Corrections Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999).  This is so because "the purpose of [an] objection is to give the court an opportunity to correct any mistake before the jury enters deliberations." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999).  If a party fails to timely object, we will review only for plain error.  *See* Fed. R. Civ. P. 51(d)(2); *United States v. McBride*, 94 F.4th 1036, 1044-45 (10th Cir. 2024).

c. *Analysis*

On appeal, Mr. Donahue contends (1) the jury instruction procedure unduly limited his ability to object to the instructions,[8] Aplt. Br. at 25-27; (2) the instructions failed to define "adverse action" and "protected activity," *id.* at 27-28; and (3) the court should not have instructed the jury that UPS maintained it fired him for legitimate reasons and also should not have included the business judgment language, *id.* at 28-30.  He has waived these arguments.

First, Mr. Donahue fails to cite any portion of the record where he objected to the jury instruction procedure, let alone before the jury was instructed.  He therefore failed to give the court "an opportunity to correct any mistake before the jury enter[ed] deliberations." *Medlock*, 164 F.3d at 553.  He has not argued plain error, *see Giron*, 191 F.3d at 1289, and has waived this issue.

Even if Mr. Donahue had properly objected, the procedure was reasonable. The district court invited the parties to propose jury instructions, "inform[ed] the parties of its proposed instructions and proposed action on the [parties'] requests before instructing the jury and before final jury arguments," and "g[a]ve the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments [were] delivered." Fed. R. Civ. P 51(a)-(b).

---

[8] Mr. Donahue appears to argue he did not have sufficient time to make objections because the court did not make its jury instructions available in a timely fashion and because the court solicited objections during trial.  Aplt. Br. at 26-27.

17

Second, Mr. Donahue did not object that the instructions failed to define

"adverse action" or "protected activity" until his post-trial motion.[9]  Under

Rule 51(d)(2), we review for plain error and affirm because he has not attempted to

show plain error.[10]

Third, Mr. Donahue argues the instructions should not have stated UPS's

position that he was "terminated for a legitimate, non-discriminatory, and

non-retaliatory reason."  Aplt. Br. at 28-29 (quotations omitted).  He has waived this

argument because he did not object before the jury was instructed and does not argue

plain error here.  *See* Fed. R. Civ. P. 51(d)(2).

Mr. Donahue also argues the district court should not have given the business

judgment instruction, asserting that UPS claimed it never terminated Mr. Donahue.

Aplt. Br. at 30.  Apart from misstating UPS's position,[11] Mr. Donahue never raised

this particular objection before the jury was instructed and instead attacked the

business judgment instruction only because he believed it misstated the law.  Because

---

[9] Although UPS asked for a clearer definition of "protected activity,"
Mr. Donahue did not object that no definition was given.  App., Vol. XI at 2726-27.

[10] Even if we generously assume Mr. Donahue preserved his "protected
activity" argument by joining UPS's request for a more specific definition of the
term, the court did not abuse its discretion.  *See Valdez v. Macdonald*, 66 F.4th 796,
828 (10th Cir. 2023).

[11] UPS argued throughout trial that it terminated Mr. Donahue after he
declined the employment options it offered.  *See, e.g.*, App., Vol. XI at 2717-18.

Mr. Donahue failed to object in district court on the grounds he presents on appeal and does not argue plain error, he has waived this argument.

## III. **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge